BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee,
vs. BLANCHARD STEBBINS & others.

Norfolk.    March 5, 22, 1941. — May 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust*, Use of principal, Payment of income, Indebtedness of beneficiary
to settlor, Discretionary payments in distribution.   *Words*, "Any
indebtedness . . . whenever incurred," "Convenience."

Trust provisions of a will of a father who at the time of his death held a
secured note of his son for $11,000 and also his unsecured notes aggre-
gating over $17,000, some of which were long overdue when the will
was made and all of which had become outlawed at the testator's death,
empowering the trustee to pay to the son from time to time such part,
not to exceed $10,000, of the principal fund as the trustee should "deem
necessary" for the son's reasonable comfort, support and convenience
or for assistance in business, but that "any indebtedness" to the extent
of $10,000 "owed by my son to me at the time of my decease, whenever
incurred, shall be paid without interest by deduction from" such pay-
ments, did not require the trustee to cancel the secured note to the
extent of $10,000, but permitted such cancellation within the trustee's
discretion.

Provisions of a will, permitting a trustee to make payments to a beneficiary
from principal before final distribution in certain circumstances and
requiring that obligations of the beneficiary to the testator first be
deducted from such payments, did not as a matter of law require that
the trustee set off the beneficiary's obligations against income other-
wise provided for him.

Under trust provisions of a will empowering the trustee to make such
payments of principal to the testator's daughter from time to time as
he should "deem necessary for" her "reasonable comfort, support and
convenience," the trustee had discretionary power to make a payment
to her for the education of her children.

PETITION, filed in the Probate Court for the county of
Norfolk on July 5, 1940, by the trustee under the will of
Herbert Stebbins, late of Brookline, for instructions.

The case was heard by *Poland, J.*, a guardian *ad litem*
having been appointed to represent certain minors and
persons unborn or unascertained who might become inter-
ested.

The instructions sought and those given by final decree

were in substance as follows: (1) Whether the will required the trustee to cancel $10,000 of a debt of Blanchard Stebbins secured by mortgage. The instruction given was "No." (2) Whether the will gave the trustee discretion to cancel $10,000 of such debt of Blanchard Stebbins secured by mortgage in priority to or ratably with his unsecured notes. The instruction given was "No." (3) Whether the will required the trustee to set off against the income payable to Blanchard Stebbins under the will the amounts due from him on his unsecured notes and his mortgage note. The instruction given was "No." (4) Whether the will gave the trustee the discretion to pay $5,000 to Mary S. Hukill for the education of her children. The instruction given was "Yes." (5) Whether, after the payment of any part of the principal to either or both Blanchard Stebbins or Mary S. Hukill, the trustee should pay income to them equally or in some different proportion. The instruction given was that payments of income should be made to them equally notwithstanding principal payments to either.

Blanchard Stebbins appealed from so much of the final decree as adjudged "that the will does not require the trustee under said trust to cancel $10,000 of a certain note and second mortgage made by said Blanchard Stebbins and Doris H. Stebbins, his wife; that the will does not give the trustee discretion to cancel $10,000 of said note and second mortgage in priority to or ratably with certain unsecured notes made by said Blanchard Stebbins, and otherwise as set forth in said decree."

The guardian *ad litem* did not appeal but in this court argued "that the three words 'comfort, support and convenience' should be read together as a single direction of the testator and that a fair construction of them is that the testator intended for them to cover the proper and reasonable physical support and maintenance of his children and nothing more; and that any other construction would lend to the words 'comfort' and 'convenience' an importance and scope attributable only to more specific and comprehensive language and not properly applicable to them, as used in the context."

*R. W. Hardy,* stated the case.

*R. J. Holmes,* for Blanchard Stebbins.

*E. E. Clark,* guardian *ad litem, pro se.*

*F. Adams & D. Holmes,* for Mary S. Hukill, submitted a brief.

QUA, J.    Herbert Stebbins, by the third clause of his will, dated June 26, 1933, left the residue of his estate to the petitioner as trustee to pay the income to the testator's widow for her life and upon her decease to his children and their issue until January 10, 1954, and thereupon to distribute the fund "to said issue by right of representation." [1] Then follow these paragraphs:

"(b) I hereby empower my trustee to pay over to either child of mine from time to time such part or parts of the principal of the trust fund as it shall deem necessary for the reasonable comfort, support and convenience, or for the assistance in business, of such child, such payments not to exceed in the aggregate Five Thousand Dollars to my daughter, and Ten Thousand Dollars to my son, and are not to be made to any grandchild.

"(c) It is my will, however, that any indebtedness to the extent of Ten Thousand Dollars owed by my son to me at the time of my decease, whenever incurred, shall be paid without interest by deduction from the payments authorized under the foregoing section 'b' of this will."

The testator left surviving him his widow, since deceased, and a son and daughter still living.    The trustee holds as assets of the trust cash and securities to the amount of approximately $10,000, and four notes of the testator's son, to wit: an unsecured demand note for $9,200, dated July 20, 1922, an unsecured demand note for $4,000, dated May 22, 1930, an unsecured demand note for $4,000, dated June 3, 1931, and a note for $11,000, made in 1926, and secured by a second mortgage on real estate worth $2,000 above the amount of the first mortgage.    We assume, as

---

[1] These provisions were in paragraph (a) which also directed that distribution of net income after the death of the widow should be "to our children share and share alike during their respective lives. . . ." — REPORTER.

all parties seem to have done, that these notes were payable to the testator, and we further assume with the appellant that all of the unsecured notes have become outlawed. Before the will was made the testator had been the president and had managed the financial affairs of a business corporation in which his son had invested and lost "more than $19,000 his entire funds," while the testator had invested in the corporation only $1,000. The testator's son is in the building business, and the trustee believes that it would be "of assistance to his business" to have $10,000 of his indebtedness cancelled, if the trustee has the power to cancel it. The trustee believes that a payment of $5,000 should be made to the testator's daughter to be used for the education of her children, as she "cannot conveniently provide for the education of her children without such payment." The judge finds that the trustee's proposed exercise of its discretion is reasonable and that the payment of $5,000 to the daughter of the testator "for the education of her children" will "contribute substantially" to her "reasonable comfort, support and convenience."

1. The will does not require the trustee to cancel the secured note to the extent of $10,000, even if the unsecured notes are all wholly outlawed. Paragraph (b) empowers the trustee to make such payments from the principal "as it shall deem necessary" for the reasonable comfort, support and convenience, or assistance in business, of a child of the testator. Paragraph (c) is a qualification of the power granted to the trustee by paragraph (b) in so far as relates to payments to the son. By paragraph (c) any payments made to the son under paragraph (b) are to be subject to a deduction of the amount of "any indebtedness" of the son to the testator "whenever incurred" to the extent of $10,000. In view of the facts that the note for $9,200 had been overdue for many years and the two $4,000 notes for shorter periods before the will was made and that the testator allowed his will to stand unchanged as the later unsecured notes became outlawed, it would seem that by "any indebtedness . . . whenever incurred" the testator meant to include any unpaid debt from his son to himself

even though it might be outlawed. He could well speak of an outlawed debt as an indebtedness owed, if it remained unsatisfied. *Cummings* v. *Bramhall,* 120 Mass. 552, 561, 562. *Sibley* v. *Maxwell,* 203 Mass. 94, 105. *First National Bank of Boston* v. *Rothwell,* 305 Mass. 116, 120, 121. To the extent that outlawed debts might have to be included in order to make an indebtedness of $10,000 in the event that the aggregate of debts not outlawed at the testator's death should be less than that sum, the trustee would be obliged to deduct outlawed debts from any payments made to the son under paragraph (b), and inasmuch as these debts are classified by the testator indiscriminately with debts not outlawed, we see no reason why the trustee cannot deduct from the payments to the son his outlawed debts to the amount of the entire $10,000 without reducing the secured indebtedness at all. If there is any anomaly in the idea that "payments" resulting in nothing more than the cancellation of outlawed debts, which amounted to no more than a moral obligation, could conduce to the "reasonable comfort, support and convenience" of the son or assist him in his business, the difficulty is one of the testator's own making, for we can conceive of no good reason for the addition of the words "whenever incurred" as a qualification of "indebtedness" unless it was to make plain that an outlawed debt might be subject to cancellation in this manner.

We see nothing in the previous business relations between the testator and his son that affects the construction of the will.

2. On the other hand we think that it also rests within the trustee's judgment to cancel any part of the secured and unbarred indebtedness up to $10,000 by means of "payments" under paragraph (b). It seems clear that such "payments" under proper circumstances, by relieving the son of liability to pay from his own resources and releasing the security, might promote "the reasonable comfort, support and convenience" of the son or might assist him in his business. Application of the payments to the debt not barred might well be a more effectual means of assisting the son.

3. There is nothing in the will that requires the trustee to set off against the income payable to the son amounts due from him on any of the notes. The trustee's duty in this regard is left to the rules of law.

4. We think that the trustee is empowered to pay the testator's daughter the sum of $5,000 for the education of her children if it deems such payment necessary for her reasonable "convenience." Convenience is a much broader word than support or comfort in the sense in which the latter words have commonly been construed in documents creating trusts. See *Paine* v. *Barnes*, 100 Mass. 470; *Stocker* v. *Foster*, 178 Mass. 591, 598–600; *Homans* v. *Foster*, 232 Mass. 4. It includes whatever conduces to freedom from difficulty, from trouble, or from annoyance and whatever promotes one's ease or advantage or is fit for one's use or suitable to one's wants. Plainly "convenience" is an alternative, notwithstanding that it is preceded by "and," as otherwise it would add nothing to "comfort" and "support." See *Litchfield* v. *Cudworth*, 15 Pick. 23, 27; *Sawyer* v. *Baldwin*, 20 Pick. 378, 384; *Commonwealth* v. *Griffin*, 105 Mass. 185; *Gaynor's Case*, 217 Mass. 86, 89. Compare *Central Trust Co.* v. *Howard*, 275 Mass. 153, 158. Money with which to educate her children might be deemed necessary to the reasonable convenience of the testator's daughter. It might satisfy that which she regarded as a need and which she might otherwise feel at pains to supply, even though she was not to receive the education herself.

5. There is nothing in the will to the effect that after payment of a part of the principal to the son or daughter, payments of income should be made in any other proportions than the equal payments provided for in paragraph (a) of the will.

The decree of the Probate Court is to be modified in respect to the answer to the second question so as to conform to this opinion, and as so modified is affirmed.

*Ordered accordingly.*