SECOND BANK-STATE STREET TRUST COMPANY, trustee, *vs.* HARRIET T. WASSERMAN & others.[1]

Suffolk. November 6, 1957. — March 10, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Construction, Correction of defective expression, Remainder.

The rules applicable to the construction of wills were to be applied in the construction of provisions of a certain indenture of trust governing the disposition of the trust income and principal after the death of the settlor. [200]

Properly construed as a whole and reasonably moulded to effect the settlor's manifest intent, an inartistically drawn indenture of trust

---

[1] The petition was taken as confessed against all of the respondents except Harriet T. Wasserman, Blanche Meyerhoff Gretsky and Emma Meyerhoff Cross, for failure to appear and answer.

providing in part that the income should be paid to the settlor during his life, that upon his death the income should be paid equally to a named brother and three named sisters, and that upon the death of the brother or any of the sisters "the share of the principal from which he or she at the time of decease was entitled to receive the income" should go to his or her issue of age free of trust or be held in trust for minor issue, or, if he or she should die without issue, his or her share should be "distributed to the beneficiaries . . . [or the issue of deceased beneficiaries] who have at that time already received distributive shares, or added to the funds then being held for . . . beneficiaries who have not received their distributive share," where the brother and one of the sisters predeceased the settlor leaving no issue, a second sister predeceased him leaving issue of age at his death, and the third sister survived him, required that upon his death one quarter of the entire principal, or one half of the principal from which the brother and the first sister would have received the income had they survived him, be paid free of trust to the issue of the second sister, a like quarter be added to the quarter to be held in trust to pay the income to the surviving sister, and the remaining quarter, from which the second sister would have received the income had she survived him, be paid free of trust to her issue, and that upon the death of the surviving sister the one half of the entire principal held in trust for her should benefit her issue, if any, otherwise the issue of the second sister. [202–203]

PETITION for instructions, filed in the Probate Court for the county of Suffolk on March 14, 1956.

The case was heard by *Mahoney*, J.

*Philip J. Woodward*, (*William A. King* with him,) for the respondent Wasserman.

*Isadore J. Silverman*, for the respondents Gretsky and another.

COUNIHAN, J. This is a petition for instructions, filed in the Probate Court, for the interpretation of an indenture of trust originally executed by Benjamin Theise of Chelsea and the Old Colony Trust Company of Boston, as trustee, on October 13, 1916. On March 25, 1937, the State Street Trust Company of Boston was appointed trustee under said trust by the Probate Court and subsequently the petitioner by merger became trustee. A guardian ad litem was appointed to represent persons unborn or unascertained.

After hearing, the judge caused a decree to be entered construing the terms of the indenture and ordering the trustee to make payments to certain named persons. He

also filed a report of material facts. No evidence is reported. The case comes here upon the appeal of Harriet T. Wasserman, a sister of the donor.

The material parts of the indenture read as follows: "I . . . do hereby deliver . . . and pay to said . . . [trustee] the securities and cash shown on the schedule hereto annexed . . .;" "[2] In Trust . . . to pay over the net income therefrom . . . to me in instalments as often as quarterly as long as I shall live; and upon my decease, to pay over the net income in like manner in equal shares to my brother, Edward Theise, . . . my sister Grace Meyerhoff . . . , my sister, Pauline Theise, . . . and my sister Bella Theise . . . .

"[3] Upon the decease of my brother and each of my said sisters, the share of the principal from which he or she at the time of decease was entitled to receive the income, shall be paid over free and discharged of all trusts to his or her issue then living by right of representation in equal shares; provided, however, that in case any such issue by right of representation are minors, the shares of such minors shall be held in trust for them during their respective minorities, the net income being paid to them or applied for their benefit, and the distribution of their shares of principal shall be made when and as they respectively attain the age of twenty-one years, and in the event that any such minor issue shall decease without attaining the age of twenty-one years, its share shall be distributed to or (as the case may be) added to the trust for the benefit of its brothers and sisters and their issue by right of representation and be treated as a part thereof. If at the time of the decease of my said brother or any of my said sisters, such deceased one leaves no issue then living, said distributive share of the principal shall be proportionately distributed to the beneficiaries (or their issue by right of representation if such beneficiary has deceased) who have at that time already received distributive shares, or added to the funds then being held for the benefit of beneficiaries who have not received their distributive share and be treated as a part thereof.

"[4] In the event that any part of the principal of the trust fund is not disposed of because the foregoing provisions for distribution are not applicable because of the decease of all the beneficiaries hereinbefore named who would otherwise be entitled to receive distributive shares, such part of the trust fund shall be paid over to my next of kin as they would then be constituted under the laws of the Commonwealth of Massachusetts if I had died intestate at that time."

When this indenture was executed the donor had another brother, Simon, and a sister, Harriet T. Wasserman, who were then living. He made no provision for either of them or their issue in this indenture of trust. Simon predeceased the donor but Harriet, who is the appellant, survived him.

Benjamin died January 23, 1955, leaving a will not yet allowed, the contents of which do not appear in the record. His brother Edward and his sister Bella predeceased him, each leaving no issue. His sister Grace Meyerhoff also predeceased him, leaving as her issue six children all of whom were living and were adults when the donor died. His sister Pauline survived him. We are informed that she never married and is of such advanced age that she could not reasonably be expected to bear issue.

The trustee sought instructions "1. As to the proportion of said trust fund which is now distributable, the persons to whom the same should be distributed and the proportions in which said distributees should take. 2. As to who will be entitled to the balance of the trust fund on the death of the respondent Pauline Theise and in what proportions. 3. For such other and further relief as may seem meet in the premises."

The decree which was entered provided "That the petitioner pay one quarter of the principal of the trust (being one half of the shares of Edward and Bella Theise respectively) to Pauline Theise forthwith; That the petitioner pay one half of the principal of the trust (being Grace Meyerhoff's share and one half of the shares of Edward and Bella Theise respectively) in equal shares to Arthur Meyerhoff, Josephine Meyerhoff, Frances Meyerhoff, Emma Meyerhoff

Cross, Blanche Meyerhoff Gretsky and Nathan Meyerhoff [being the issue of Grace] forthwith. That the petitioner hold the remaining one quarter of the trust property and pay the net income therefrom to Pauline Theise for her life. . . ."

The contention of the appellant is that because Edward, Bella and Grace all predeceased the donor the provision in paragraph 2 of the indenture for the payment of the income which each of his named brother and sisters would have received, had they been living at the death of the donor, never came into operation. She further argues that the provision for payment of that income or any share of principal lapsed so that the issue of Grace (who was the only one to leave issue) were not entitled to any part of the income or principal of said trust on the death of the donor. She asserts that the payment of the income of three fourths of the trust, which lapsed by reason of the deaths of Edward, Bella and Grace, should be added to the original one quarter of the income which Pauline was entitled to receive at the death of the donor so that Pauline would receive all of the income of said trust for the remainder of her life. Alternatively she suggests that Pauline should receive only the income of one quarter of the original trust fund at the death of the donor and that the income of the remaining three quarters of the trust fund be added to the trust to be held by the trustee until the death of Pauline, when all the trust fund and accumulated undistributed income should be paid to those who at that time would be the next of kin of Benjamin Theise, in accordance with the provisions of the fourth paragraph of the indenture. We do not agree with any of these contentions.

It seems plain from a reading of the trust indenture that the primary purpose of the donor was to provide an income to himself for life and that on his death such income should be distributed to his named brother and sisters, if living, in equal shares during their lives and in certain circumstances the principal of the trust should be paid to their issue. Manifestly the donor did not intend to provide for any dis-

tribution of income except to himself or any part of the
principal before his death for he expressly provided for the
payment of the net income of the principal to himself during
his life.

The troublesome words of the indenture are found in the
third paragraph in which the donor seeks to provide for the
payment of income and the distribution of the principal of
the trust after his death.   In this respect at least it is plain
that the indenture was inartistically drawn and imperfec-
tions in the language used in this paragraph have caused the
confusion which led to the present controversy.   The drafts-
man apparently did not realize that Edward or any of his
named sisters might predecease the donor.

The donor obviously refrained from making any specific
provision in the indenture for Simon or Harriet or the issue
of either of them and intended that none of them should
share unless he or she should take under the provisions
of paragraph 4, which never became applicable because
Pauline and the issue of Grace were living at the death
of the donor.

Reading the indenture as a whole we conclude that the
donor did not intend to make any provision for distribution
of any share of the principal until after the death of his
named brother or any of his named sisters entitled to the
income of such share and then only after the death of the
donor.

This indenture has many of the characteristics of a will
and we think that it should be construed in accordance
with rules applicable to the construction of wills.   *Old Col-
ony Trust Co.* v. *Treadwell,* 312 Mass. 214, 216–217.   *Old
Colony Trust Co.* v. *Clemons,* 332 Mass. 535, 539.   *Second
Bank-State Street Trust Co.* v. *Second Bank-State Street
Trust Co.* 335 Mass. 407, 415.

It has been recently said that "In order to effect . . .
[the real intention of the donor] we may within reasonable
limits supply by implication a defect in its expression. . . .
Grammatical construction may be altered, sentences and
words transposed, and words supplied if necessary to give

effect to the manifest intent." *Balcom* v. *Balcom*, 333 Mass. 599, 601–602. *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, 374. *Dansereau* v. *Dansereau*, 318 Mass. 363, 364–365. *Fay* v. *Fay*, 334 Mass. 311, 319.

Taking into account the two phases of the donor's general intention which we have mentioned, (1) that no income was to be enjoyed by any person other than himself until his death; and (2) that he intended no one of his named brother and sisters to have any share of the principal during his or her life, the proper construction of the third paragraph becomes plain.

(1) By the words "the share of the principal from which he or she at the time of decease was entitled to receive the income" he meant also to refer to the shares from which he or she would have been entitled to receive income had he or she been living at the death of the donor. It seems likewise clear that he meant that the share of the principal from which each of his named brother and sisters would have been entitled to receive income, had he or she survived the donor, should go to the issue of such brother or sister, if any, by right of representation.

(2) By the words in the second sentence of paragraph 3, "at the time of the decease of my said brother or any of my said sisters" leaving no issue "said distributive share of the principal shall be proportionately distributed to the beneficiaries (or their issue by right of representation . . .) who have at that time already received distributive shares, or added to the funds then being held for . . . beneficiaries who have not received their distributive share," the donor meant (a) to provide a gift over in the event of the death of any of his named brother and sisters without issue, either before or after the death of the donor, and (b) to provide for payment of such share of the principal outright to the issue of any deceased named brother or sister who then had already reached the age of twenty-one years, and (c) to have such a gift over to Pauline added to the share from which Pauline was entitled to receive income on the death of the donor (Pauline never being entitled to receive outright any

distributive share) and upon the death of Pauline to be paid over to her issue if any, or added to the fund held for the benefit of any issue of any named brother or sister who were then under the age of twenty-one years or be paid over to any such issue who have attained the age of twenty-one years. We think it plain that the words "beneficiary" or "beneficiaries" in paragraph 3 include his named brother and his named sisters and the issue of any of them who died before or after the donor.

As thus construed in the light of the events which have happened, we think the indenture means that one quarter of the principal of the trust (being one half of the principal of the trust from which the deceased Edward and Bella together would have been entitled to receive income if living at the death of the donor) should upon the death of the donor be paid to the issue of Grace (she having died before the death of the donor), free and discharged of all trusts. A like one quarter of the principal should be added to the one quarter share from which Pauline was entitled to receive income upon the death of the donor. The remaining one quarter from which Grace would have been entitled to receive income upon the death of the donor should be paid to the issue of Grace all of whom then were living and of full age.

As a result the issue of Grace should now be paid one half of the principal and the other half should be held by the trustee from which to pay Pauline the income during the remainder of her life. Upon the death of Pauline leaving issue (which is highly improbable) such half of the principal should be paid to her issue who are of age free and discharged of all trusts or held for the benefit of her issue who are minors. If Pauline leaves no issue such half of the principal should be paid to the children of Grace equally and if any of such children shall have died leaving issue before the death of Pauline then his or her share should be paid to such issue equally if they are twenty-one years of age or over free and discharged of all trusts; if such issue are not twenty-one years of age at the death of Pauline the shares of such issue

who are minors shall be held by the trustee to pay the income of such shares to said minors quarterly and to pay over a proportionate share of the principal, together with accumulations of income thereon, to each of them when he or she shall reach the age of twenty-one. If any of such issue who are minors shall die before reaching the age of twenty-one then his or her share of the principal shall be distributed as provided in paragraph 3 of the trust indenture as we have construed it herein.

The decree is reversed and a new decree is to be entered in the Probate Court not inconsistent with what we have said in this opinion. Costs and expenses of this appeal are to be awarded in the discretion of the Probate Court.

*So ordered.*