## Blackwood Estate

 

*Kenneth M. McLure,* for petitioner.

*Errol Fullerton* and *Robert George,* for respondents.

*L. Ivan Hudson,* trustee ad litem.

REED, *J.* (of the 36th Judicial D1strict, Specially Presiding), February 28, 1977 — This is a declaratory judgment proceeding to interpret certain provisions of decedent's will. The relief prayed for may properly be granted under the provisions of the Uniform Declaratory Judgment Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq. Under section 4 of the act, 12 P.S. §834, it is provided that "any person interested . . . may have a declaration of rights or legal relations in respect thereto . . . (c) To determine any question arising in the administration of the estate of [sic] trust, including questions of construction of wills and other writings."

A trustee ad litem has been appointed and notice given to the Attorney General.

The questions for determination are certain ambiguities in the will of decedent and are stated in the brief of petitioner, the testamentary trustee, thus:

"1. Should aid in educational expenses of paragraph seven beneficiaries be limited to (1) college, (2) college and graduate studies taken continu-

ously after college, (3) other reasonably limited time or (4) until their respective deaths?

"2. Should there be obtained by the Committee of Selection a promissory note or other document or security from recipients of loans to paragraph eight beneficiaries or is that discretionary in the Committee but if obtained, to what extent should it be enforced?

"3. Should the financial status and resources of recipients of paragraph eight grants be investigated, and to what extent or is this discretionary in the Committee?

"4. To what extent has the Committee discretion as to preferring descendants of Decedent and his predeceased wife and those intending to devote their lives to christian service and if not discretionary, does that language mean 'limited to'?

"5. Whether the President of Petitioner now fulfills the terms of the Will as a member of the Selection Committee; if not, the New Castle branch manager of Petitioner and if neither of them do, does the language of the Will permit the appointment of some other suitable person?

"6. Is there in law a limit as to time of preference being given to relatives of Decedent and his wife beyond which it should not apply?"

Decedent-testator, James M. Blackwood, aged 76 years, died June 25, 1953, having first made his last will and testament, dated July 8, 1949, and of record in the Register of Wills Office of Lawrence County. . . . In said will, he devised and bequeathed his entire estate to Lawrence Savings & Trust Company, New Castle, Pa., in trust for various uses and purposes. We are here concerned with paragraphs 7 and 8 of the will, which read in this manner:

"7. The said Trustee is directed to pay one-half of the expenses of John Ray Nelson; David Wood Jones; Thomas John Rashella; Roy Magee; Gerald Magee; while attending college or other suitable educational institution. Trustee is further directed to pay three-fourths of the expenses of Sally Helen Nelson; Mariam Louise Jones (Miriam); Ruth Ellen Jones; Martha Edith Rashella (R. Lillisch); Ruth Evelyn Magee; Edith Eleanor Magee; Edna Magee; Caroline Magee; Bonnie Magee and Nancy Magee while attending college or other suitable educational institution.

"8. I direct that the rest, residue and remainder of my estate shall be kept in a separate fund by my said Trustee, in trust for the following uses and purposes.

"I direct that said residue shall be loaned or invested by the Trustee and the income and profit arising therefrom shall be used for the education of needy and deserving young men and young women who have no estate, under the following terms and conditions, to-wit:

"(a) The said young men and young women shall be consistent members of a Protestant Evangelical Christian Church, and be active in the Sabbath School and other christian activities of such church.

"(b) No young man shall receive more than one-half of the cost of his educational expenses while attending a college or other suitable educational institution.

"(c) No young woman shall receive more than three-fourths of the cost of her educational expenses while attending a college or other suitable educational institution.

"(d) None of the income or profits shall be used

for the education of any young man or young woman except while she or he is attending some college or other suitable educational institution in which biblical instruction shall constitute part of the curriculum of such college or educational institution; provided, however, that this provision shall not apply to an educational institution in which such young man or young woman is taking a technical course, preparatory to his or her entering some profession or special calling in life.

"(e) No college or other educational institution shall be approved by the committee hereinafter mentioned in sub-paragraph F and G as a place in which such young men and young women shall receive such education, except Protestant Evangelical Christian Colleges and Schools.

"(f ) The young men and young women who are to receive the benefits arising under paragraph eight of this will shall be determined and decided upon by a committee, consisting of the President of the Lawrence Savings & Trust Co. and the judges of the Court of Common Pleas of Lawrence County, Pennsylvania, whose duty it shall be to determine what college and other suitable educational institutions the beneficiaries under paragraph eight of this will shall attend and make such rules and regulations for the administration of the income and profit arising from the fund to be used for educational purposes as the said committee shall from time to time deem advisable. Said rules and regulations shall be consistent with the provisions of this will.

"By the use of the words 'President of the Lawrence Savings & Trust Co. and the judges of the Court of Common Pleas of Lawrence County, Pennsylvania' as used in sub-paragraph F, is

meant such President of Lawrence Savings & Trust Co. and judges of the Court of Common Pleas of Lawrence County, Pennsylvania, as may be qualified and acting at the time when application for assistance is made.

"In selecting the beneficiaries under this educational program, preference is to be given to descendants of the families of my wife and of myself. Following that preference shall be given to persons who intend to devote their life to Christian service as Ministers, Missionaries or Teachers in missions or mission schools.

"(g) The said committee shall endeavor to have the students benefited under this provision of my will, return and pay back to the Trustee, such money or monies as may have been advanced for their education; provided, however, that said committee shall not demand, require or receive security for the return of said money, but shall do such things as they deem advisable to induce and persuade such students to return the money advanced in their behalf when the financial circumstances of such students shall enable them so to do."

The law applicable to the interpretation of wills in Pennsylvania is set forth in Hoover Estate, 417 Pa. 263, 266, 207 A.2d 840 (1965), in this language:

"In HOUSTON language:

"In Houston Estate, 414 Pa. 579, 201 A. 2d 592, the Court, quoting from prior decisions, said (page 586-587): '. . . " 'It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surround-

ing him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: (citing cases).' " '

" '. . . " 'It is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. (citing cases).' " ' "

In Moltrup Est., 424 Pa. 161, 166, 225 A.2d 676 (1967), the court, speaking through Mr. Chief Justice Bell, quoted the above from Hoover Est., and added the following:

"In Woelpper's Appeal, 126 Pa. 562, 17 Atl. 870 (1889), the Court, speaking through Mr. Justice, later Chief Justice, Mitchell, said (page 572): 'In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. It is often said, as in the language of Weidman's App., 42 Leg. Int. 338 (citing case) "The question in expounding a will is not what the testator meant, but what is the meaning of his words." But by this it was never intended to say that the testator's meaning when apparent can be disregarded, but, that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning.'

" 'With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction,

by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid, not to override it. As in all such cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it.' "

In Banes Estate (1973), 452 Pa. 388, 392, 305 A. 2d 723, the Supreme Court, speaking through Mr. Justice Roberts, reiterates: "The law and the legal principles governing the interpretation of wills is well settled, but their application . . . is often difficult. The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain . . ."

The admitted records and testimony establish that decedent was a physician and that his estate, after other bequests, taxes and expenses, approximated $103.000 for the educational grant purposes under paragraphs 7 and 8 of his will. As of the hearing date, September 30, 1976, the corpus remaining was $40,475 and invested income of $3,500. In 1973, the dividend and interest income of the fund was $4,328.54 and in 1974, $2,896.29.

Since the establishment of the trust the male and female individual beneficiaries named in

paragraph 7, who have requested it, have been allocated "expenses" while attending college from both principal and income totaling $72,311.37.

At the present time, held in abeyance, are three applications from paragraph 7 beneficiaries for post-graduate expenses.

Since 1954 income only has been paid out to 70 applicants under the provisions of paragraph 8 amounting to $50,335 and repayments made by the recipient beneficiaries in the sum of $8,000.

We conclude that the trust is a charitable trust. See Commonwealth Trust Co. of Pittsburgh v. Granger, 57 F. Supp. 502 (W.D. Pa. 1944), and Eberhardt Estate, 26 Fiduc. Rep. 245 (1976).

Briefs were received by the hearing judge on December 18, 1976, January 28 and February 11, 1977.

The principal question to be determined is to what educational expenses are the beneficiaries entitled.

It is contended by most of those named in paragraph 7 that they are entitled to continuing and unlimited expenses for post-graduate education as long as they live and so long as they desire and request it; it is argued that since the creator of the trust was a physician who had himself received post-graduate education in medicine, attended advanced seminars in medicine during his years of practice, was a college trustee for many years, and was aware that many students attended graduate school, he could not have intended the paragraph 7 provisions to be limited to a general college education.

The testimony shows that the beneficiaries under paragraph 7 are all sui juris — none younger than 22 years of age and that none of the

beneficiaries has thus far pursued any courses in college to prepare them to become physicians, clergymen, engineers or attorneys.

While we find no helpful Pennsylvania decision, it is the accepted general rule that where the trust is for the education of the beneficiary, in the absence of an expressed intention to the contrary the trustee may make payments to enable the beneficiary to secure a college education: (Boston S.D. & Trust Co. v. Stebbins, 309 Mass. 282, 34 N.E. 2d 616, 148 A.L.R. 1036, 1039 (1941), but the term "education" usually has *not* construed to include a professional or post-graduate course: Murphy v. Morris, 200 Ark. 932, 141 S.W. 2d 518 (1940); Bogart on Trusts, 2d Ed., Ch. 11, notes 73, 74.

When we examine the provisions of this will in the light of the cited authority, keeping in mind as stated in Woelpper's Appeal, supra, that "care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it," we construe the phrase "attending college or other suitable educational institution" to be limited to the usual degree arising from not more than an ordinary four-year college education. Even the requirement of "biblical instruction" under paragraph 8(d) does not apply to those "taking a technical course, preparatory to his or her taking some profession or special calling in life."

It is also interesting to note that under Internal Revenue Service regulations to qualify as a student, it is required that a student be enrolled as a full-time student in an educational institution, and educational institution is interpreted to mean "a school that has a regular teaching staff, course of study, and body of students in attendance. It in-

cludes elementary schools, junior and senior high schools, colleges, universities, technical and mechanical schools . . . ." Post-graduate studies are not included within the meaning of a student in an educational institution.

We, therefore, reject the contention made by the paragraph 7 beneficiaries. To do otherwise would mean that the trust under that paragraph would continue until the last one of them was deceased or they had all renounced their post-graduate intent, and this to the exhaustion of the entire trust estate so was to make paragraph 8 ineffectual and beneficiaries of the benefits intended.

Advisory opinions are not a function of this court. However, we are aware that the remaining questions need some clarification. In doing so, we must recognize and distinguish between the obligations and duties of the "trustee bank" and the "committee." The questions require some interpretation of paragraph 8. We first observe that "college education or other suitable education" does not, under this paragraph, include expenses for post-graduate studies. The duty imposed upon the trustee bank under paragraph 8 is to invest the remaining corpus and to make the income therefrom available to the eligible young men and young women. It is not the duty of the trustee to seek out the "needy and deserving young men and women who have no estate." It does have to be reasonably satisfied that those recommended by the "committee" meet the selection provisions of the will. Additionally, the will imposes no duty upon the trustee bank to require some security, promissory note, contract or other obligation from the recipient student for repayment of the advanced expenses.

Under paragraph 8, it is the *committee's* duty to

*"endeavor"* to have the students repay the advancement only when and if their "financial circumstances shall enable them to do so." The will provides in positive language that the committee "shall not *demand, require* or *receive* security for the return" of the money.

We, therefore, find that the committee is vested with the discretion, acting with good faith and within the expressed intent of the trust creator, to make all reasonable effort to impress upon the student recipients that repayment should be made when their financial circumstances permit.

The responsibilities of the committee are spelled out in paragraph 8 thusly: Giving the first preference to the descendants of the *families* of decedent and his wife, following that with preference to those who intend to devote their life to service as ministers, missionaries or teachers in missions or mission schools. They are to select needy and deserving young men and women who have no estate and who are consistent members of a Protestant Evangelical Christian Church, . . . . active in Sabbath School and other christian activities . . .

So selected, the students are to receive a part of their expenses while attending college and, excepting those taking a technical course, in which biblical instruction constitutes a required subject.

We are of the opinion that it is not the duty of the committee to go out on the highways to seek out those who would qualify under these stated preferences. We hold that the only duty and obligation of the committee is to make known these provisions of the will in a general manner and then carefully scrutinize those who apply to see if they meet the requirements of the will and if so, to approve them for the expense allowance. In doing this,

notice should be given to all colleges meeting the qualifying provisions of the will and to technical schools of which the committee is aware or can reasonably ascertain and determine that they are located within a reasonable radius of the City of New Castle (we suggest within a radius of 25 to 50 miles) and by publication of the paragraph 8 provisions twice each year in the Lawrence County Legal Journal and a newspaper of general circulation published in the City of New Castle.

The financial status of each applicant and the determination of whether they possess an "estate" should be made by usage of ordinary business methods and the requirement of an affidavit as to each individual applicant's assets.

To answer questions 4 and 6, we hold that so long as the applicants are persons within the stated provisions of the last unnumbered paragraph of paragraph 8(f), they are to be preferred in the manner designated and without limitation as to time.

Consistent with the provisions of the will, paragraph 8(f), the committee is directed to make rules and regulations for the administration of the income arising from the fund. If they are reasonable, this court could not, and should not, modify or invalidate them.

Qualifications of the members of the committee are established by subparagraph 2 of paragraph F and cannot be changed by court decision. The president of the First Seneca Bank and Trust Company is now the member designated on the committee and becomes such in the same manner that the bank became the successor trustee by virtue of the merger with the Lawrence Savings and Trust Company.

However, we are of the opinion and so hold that the members of the committee, unlike the trustee, may refuse to serve and may resign, without the approval of the court. In the event this should occur, it would then be for the court to determine whether new committee members could, and should, be appointed and, if so, their qualifications; otherwise the court might be required to terminate this educational trust as no longer practical of being carried out, and invoke the doctrine of cy pres.

## ORDER

Now, February 28, 1977, it is ordered, adjudged and decreed:

1. That under the provisions of paragraphs 7 and 8(b) and (c) of the last will and testament of James M. Blackwood, the phrase therein "expenses while attending a college or other suitable educational institution" does not include professional or post-graduate courses.

2. It is not the duty of the trustee bank nor of the committee to require some security, promissory note, contract or obligation from the recipient student for repayment of the advanced expenses.

3. The financial status of each applicant and the determination of whether they possess an "estate" should be made by the committee, using ordinary business methods and the requirement of an affidavit from each individual applicant as to his or her assets or estate.

4. So long as the applicants are individuals within the stated provisions of the last unnumbered paragraph of paragraph 8(f) they are to be preferred in the manner designated and without limitation as to time.

5. The president of the First Seneca Bank and Trust Company is now the member designate of the committee and became such in the same manner that the bank became the successor trustee by virtue of the merger with the Lawrence Savings and Trust Company.