JOHN F. GRODEN & another,[1] trustees, *vs.* VINCENT J.
KELLEY, JR., & others.[2]

Middlesex. October 8, 1980. — January 21, 1981.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Trust*, Construction, Indebtedness of beneficiary to settlor. *Evidence*,
   Extrinsic affecting writing. *Debt*. *Bankruptcy*, Discharge.

A provision of a trust that "[i]f any of the Donor's children are indebted to
   him . . . at the time of distribution of the principal, such indebtedness
   . . . shall be deducted from the share of such child" required that the
   amount of an unpaid debt owed by one of the donor's children to the
   donor be deducted from that child's share even though the debt had
   been discharged in bankruptcy prior to the donor's death. [335-339]

CIVIL ACTION  commenced in the Middlesex Division of
the Probate and Family Court Department on November 14,
1978.

The case was heard by *Ginsburg*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Daniel J. Finn* for Kevin E. Kelley.

*Robert B. Russell* for Vincent J. Kelley, Jr., & another.

LIACOS, J.  The plaintiffs, trustees of a revocable trust
created by the decedent, Vincent J. Kelley, M.D., com-
menced this action in the Probate Court seeking instructions
interpreting a provision in the trust.  The disputed provision
requires that if any of the beneficiaries (the donor's chil-
dren) is indebted to the donor at the time of distribution of
the trust principal, such indebtedness must be deducted

---

[1]John R. D. McClintock.

[2]Stephen E. Kelley, Kevin E. Kelley, and Judith Kelley Nelligan.

from that child's distributive share.[3] A son, Kevin, had borrowed $25,000 from the donor, of which $20,000 was unpaid at the time of the father's death. The trustees seek a determination whether this provision requires the deduction of the $20,000 debt which was discharged in bankruptcy prior to Dr. Kelley's death. The defendant beneficiaries disagree as to the effect of this provision. Kevin Kelley and his sister Judith Kelley Nelligan claim the debt should not be deducted from his share. Kevin's brothers, Vincent J. Kelley, Jr., and Stephen E. Kelley, claim the debt should be deducted. The Probate Court judge ruled that the debt should be deducted. Kevin Kelley appeals from that ruling. Having granted his application for direct appellate review, we affirm.

The Probate Court judge found the facts as follows. On November 20, 1953, Dr. Kelley created a revocable trust for the benefit of his wife during her life which gave her a general power of appointment. The trust further provided in the event Mrs. Kelley failed to exercise the power, which failure occurred, that the trust principal should be distributed equally to their four children.

In 1969 Dr. Kelley loaned his son Kevin $25,000. Kevin repaid $5,000 of this loan in 1970. However, the circumstances of Kevin's financial affairs led to an estrangement between him and his father. On April 24, 1970, Dr. Kelley amended the trust to include the provision which is the subject of this dispute, as well as a provision entirely excluding Kevin from receiving any benefit under the trust. On August 22, 1972, Dr. Kelley deleted the provision excluding Kevin from receiving any benefits. On October 21, 1974, Kevin filed a voluntary petition in bankruptcy in Federal court. The $20,000 unpaid portion of Kevin's debt to Dr. Kelley was discharged by the Bankruptcy Court.

---

[3] The pertinent language of the trust provides: "If any of the Donor's children are indebted to him and/or his wife, NATHALIE M. KELLEY, at the time of distribution of the principal, such indebtedness shall be considered as part of said principal, but shall be deducted from the share of such child."

Dr. Kelley died on August 4, 1975, leaving a will that was probated and which contained pour-over provisions to the November 20, 1953, trust. Mrs. Kelley died on August 8, 1977, leaving a will that was probated and which also contained pour-over provisions to the trust.

At the hearing of this matter, testimony of John F. Groden, a friend of Dr. Kelley, as well as his attorney and one of the trustees, was admitted, de bene. Mr. Groden testified Dr. Kelley told him subsequent to the execution of the trust and its amendments that he knew Kevin's debt of $20,000 was discharged by Kevin's discharge in bankruptcy and the discharge ended the matter. Mr. Groden interpreted these statements as a statement of Dr. Kelley's intention that Kevin's discharged indebtedness was not to be deducted from Kevin's distributive share under the trust. There was also testimony by Vincent Kelley, Jr., and Stephen Kelley that at the time of the discharge in bankruptcy and continuously thereafter, Dr. Kelley was in a nursing home as a result of a stroke and that his ability to communicate was very much impaired.

We turn now to consider the merits of this appeal. It is fundamental that a trust instrument must be construed to give effect to the intention of the donor as ascertained from the language of the whole instrument considered in the light of circumstances known to the donor at the time of its execution. *Dana* v. *Gring*, 374 Mass. 109, 117 (1977), and cases cited.

The trust instrument directs the trustee upon the death of Dr. Kelley or his wife, whichever occurs later, to divide any remaining trust principal as well as any accumulated but undistributed income "into such number of shares as shall provide one equal share for each of the Donor's children then living . . . ." The trust instrument should be read as expressing Dr. Kelley's intention to treat all of his children equally with regard to the distribution of his estate. We view the April 24, 1970, amendment as intended to maintain and preserve the equality of treatment of Dr. Kelley's children. It should therefore be read to require a deduction of any of the children's unpaid debts to Dr. Kelley, regardless of their technical legal enforceability. Cf. *Cummings*

v. *Bramhall*, 120 Mass. 552, 561-562 (1876) (similarly construing will with regard to notes barred by the statute of limitations).[4]

The testimony of Mr. Groden, admitted de bene, requires no contrary conclusion. Dr. Kelley's statements are at best equivocal as expressions of his intentions regarding the trust. In any event these statements, made after the execution of the trust and its amendments, were inadmissible as direct proof of Dr. Kelley's intention in using the language in the trust instrument.[5] *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 581-582 (1935). *Saucier* v. *Saucier*, 256 Mass. 107, 110 (1926). Cf. *Gustafson* v. *Svenson*, 373 Mass. 273 (1977).

The appellant argues that the term "indebtedness" as used in the trust instrument should be given its normal and well-understood meaning and that in common parlance a debt ceases to be a debt when it is either no longer due or no longer collectible. We disagree. It is established that a "discharge [in bankruptcy] destroys the remedy but not the indebtedness." *Zavelo* v. *Reeves*, 227 U.S. 625, 629 (1913). In *Canton Lumber & Supplies, Inc.* v. *MacNevin*, 354 Mass. 563 (1968), the court held that discharge in bankruptcy does not extinguish the debt but is merely a bar to its enforcement. See *Elliott* v. *Warwick Stores, Inc.*, 329 Mass. 406, 408 (1952); *Zwick* v. *Freeman*, 373 F.2d 110, 115-116 (2d Cir.), cert. denied, 389 U.S. 835 (1967); *Helms* v. *Holmes*, 129 F.2d 263, 266 (4th Cir. 1942). A moral obligation to pay the debt survives the discharge. *Zavelo* v. *Reeves, supra. Girardier* v. *Webster College*, 563 F.2d 1267, 1271 (8th Cir. 1977).

---

[4]The requirement to construe the instrument to give effect to the intention of the donor is essentially identical in the case of both trusts and wills. Compare *Dana* v. *Gring*, 374 Mass. 109, 117 (1977) (trusts), and cases cited, with *Gustafson* v. *Svenson*, 373 Mass. 273, 275 (1977) (wills), and cases cited. See *Second Bank-State St. Trust Co.* v. *Wasserman*, 337 Mass. 195, 200 (1958), and cases cited.

[5]We note that no motion to strike appears in the record as to this evidence. Had such a motion been made, it would have been proper to allow it. The probate judge apparently properly disregarded such evidence in reaching his findings and conclusions.

The appellant concedes that by using specific language, a donor may provide for the deduction of debts discharged in bankruptcy. *Allen* v. *Edwards*, 136 Mass. 138 (1883) (recognizing rule with regard to a debt barred by statute of limitations).[6] Relying on *Allen* and *Old Colony Trust Co.* v. *Underwood*, 297 Mass. 320 (1937), the appellant contends that the language in the April 24, 1970, amendment is not sufficiently specific to require deduction of a discharged indebtedness. This misperceives the import of those cases. *Allen* and *Underwood* both turned on the absence of any language whatever in the instrument requiring the deduction of unpaid debts.[7]

The appellant next relies upon the construction in *Boston Safe Deposit & Trust Co.* v. *Stebbins*, 309 Mass. 282 (1941), of a will which provided for the deduction of "any indebtedness . . ., whenever incurred." The quoted language was considered determinative of the testator's intent and held to require deduction of debts barred by the statute of limitations. The appellant argues that the emphasis in *Stebbins* on the quoted language suggests that in the absence of such qualifying language no deduction of outlawed indebtedness is required. We disagree. *Stebbins* does not establish a rule of general applicability. The court in *Stebbins* was persuaded by clear and unambiguous language indicating a particular testator's intent. That decision does not absolve us of our responsibility in this case to look to the entire instrument to determine this donor's — albeit less clearly expressed — intent.[8]

---

[6] The appellant assumes, and we agree, that for purposes of this rule, a debt barred by the statute of limitations is analogous to a debt barred by a discharge in bankruptcy.

[7] In *Allen* the court construed the statutory predecessor of G. L. c. 197, § 25, as requiring the deduction from a legatee's distributive share of only legal debts in the face of a testator's silence with regard to deduction of indebtedness. *Underwood* likewise recognized this rule. Thus, these cases rejected as the law of Massachusetts the common law doctrine of "equitable retainer" which requires the deduction of a beneficiary's debt, whether legal or barred, despite the testator's or donor's silence.

[8] In rejecting the appellant's suggested rule, we observe that in *Rogers* v. *Daniell*, 8 Allen 343 (1864), the phrase "legal debts" was held

Finally, the appellant argues that by virtue of the supremacy clause of the Federal Constitution, the Federal Bankruptcy Act, as in effect at the time of his discharge in bankruptcy, precludes the Probate Court from ordering that the discharged debt be deducted. The appellant takes the position that the plaintiffs' petition to the Probate Court for instructions construing the trust instrument requires the Probate Court to adjudicate the appellant's liability to an estate for a debt discharged in bankruptcy, and therefore constitutes the institution of an action or employment of a process to "collect such debts as personal liabilities of the bankrupt" in contravention of § 14 (f) (2) of the Bankruptcy Act.[9] The appellant argues further that by determining that the appellant's discharged indebtedness should be deducted, the Probate Court has improperly placed its imprimatur upon an action or process enabling a creditor to collect a discharged debt as a personal liability of the bankrupt. The appellant places primary reliance for this position on the Supreme Court decision in *Perez* v. *Campbell*, 402 U.S. 637 (1971). In *Perez* the Court struck down an Arizona statute which required the revocation of a driver's license for failure of the driver to pay a motor vehicle tort judgment, notwithstanding the subsequent discharge in bankruptcy of the judgment debtor.

We do not believe that the plaintiffs' petition or the judge's ruling in this case contravenes either the letter or the spirit of the Bankruptcy Act. The 1970 amendment to the

dispositive of the testator's intent that a legally unenforceable debt should not be deducted.

[9] Section 14 (f) of the Bankruptcy Act (11 U.S.C. § 32 [f] [1970]), in effect at the time of the appellant's discharge, provided: "An order of discharge shall —

"(1) declare that any judgment theretofore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any [discharged debts]; and

"(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt."

This section was added by Pub. L. No. 91-467, § 3, 84 Stat. 991 (1970). The present version is found in 11 U.S.C. § 524 (a) (Supp. II 1978), added by Pub. L. No. 95-598, 92 Stat. 2592 (1978).

Bankruptcy Act relied upon by the appellant was enacted to curtail the prior widespread practice of creditors instituting State court actions on discharged debts in the hope that the debtor would fail to plead affirmatively the discharge, thus, under prior law, enabling the creditor to obtain a judgment. See *Girardier* v. *Webster College,* 563 F.2d 1267, 1271-1273 (8th Cir. 1977). Section 14 (f) (2) has been uniformly construed by the Federal courts to prevent creditors only from taking judicial actions (such as an action on the debt, garnishment or attachment) to collect on discharged debts, and not to prevent informal, nonlegal methods. *Ryan* v. *Ohio Edison Co.,* 611 F.2d 1170, 1172-1173 (6th Cir. 1979), and cases cited. The keystone to the Supreme Court's decision in *Perez* was the State statute's effect as "a powerful weapon for collection of a debt" that has been released by operation of Federal law. *Girardier* v. *Webster College, supra* at 1273, quoting from *Perez* v. *Campbell, supra* at 650. Courts applying the rule of *Perez* have limited that holding to apply to State action only, and not to private action to collect discharged debts. *Girardier* v. *Webster College, supra* at 1273-1274. In any event, the Probate Court judge has not made "a determination of the personal liability of the bankrupt" in this case. Rather, the judge has construed the donor's intention as to how the principal of the trust should be distributed among his heirs. In a similar context a Missouri Court of Appeals aptly observed: "The issue in this case does not involve the question of enforcement of obligation, moral or otherwise. The issue herein involves equality of . . . inheritance among the heirs." *Leach* v. *Armstrong,* 236 Mo. App. 382, 388 (1941).

In view of our conclusion we need not consider the argument of the appellees, Vincent J. Kelley, Jr., and Stephen E. Kelley, that the doctrine of "equitable retainer" is applicable in this case and requires deduction of the appellant's debt from his distributive share.[10]

*Judgment affirmed.*

---

[10] See note 7, *supra.*