New England Merchants National Bank, trustee, vs.
Julius P. Morin & others.[1]

Suffolk.   March 16, 1983. — May 26, 1983.

Present: Armstrong, Kaplan, & Kass, JJ.

*Trust*, Construction, Payments from principal, Distribution.

Under a trust instrument providing that the trustee could make payments
   from principal to the settlor's children and the wives of his sons for "ex-
   traordinary or emergency purposes," that "such payments shall not af-
   fect the share of income to which the recipient . . . shall thereafter be
   entitled," that upon the death of the settlor's children and any widows
   of his sons the principal was to be distributed to the settlor's issue per
   stirpes, and containing no provision that any payments from principal
   should be charged against the estate of the one benefited, payments
   made from principal for certain expenses of a son of the settlor and the
   son's wife were not to be charged against the share to be distributed to
   that son's issue upon termination of the trust. [107-109]

Complaint for instructions filed in the Suffolk Division
of the Probate and Family Court Department on March 7,
1979.

The case was heard by *Warner*, J., on motion for sum-
mary judgment.

*James R. DeGiacomo (Paula J. Popeo* with him) guar-
dian ad litem for minor issue of Julius P. Morin.

*William F. Butler, III*, for Myrtle H. Morin & others.

*David Hern, Jr.*, for Jerry M. Brown, guardian ad litem
for minors and persons unascertained or unborn who are
not issue of Julius P. Morin.

---

[1] Other defendants are the widow of the settlor, issue of the settlor, a
guardian ad litem for minors and persons unascertained who are not issue
of Julius P. Morin, and a guardian ad litem for minor issue of Julius P.
Morin, who is the appellant from the judgment below.

*James R. Senior* for Marcelline A. McManus & others.

KASS, J. By a declaration of trust dated November 26, 1952 (and later amended on three occasions), Philias T. Morin (the settlor) placed certain of his property in trust, and provided that termination of the trust and distribution of its proceeds would occur upon "the death and the last survivor of my said four children and my said sons' widows." New England Merchants National Bank (the bank), a corporate trustee under the trust instrument, brought a complaint for instructions inquiring whether funds paid from invasions of principal to Julius P. Morin (Julius), a son of the settlor, should be charged against the share of the trust to be distributed to the issue of Julius, or whether the trust res should simply stand reduced without allocation.

All the children of the settlor have died, but the widows of two of his sons are still alive. The trust, therefore, is not ripe for distribution, but, as the trustee has no further authority to invade principal (see texts quoted below), the question put by the bank is of practical utility, and the judge of the Probate Court who heard the case quite rightly took jurisdiction. "[I]t is as well to answer [the] inquiry as to invite a return of the case to this court with the same question by not answering it now." *Sears* v. *Childs,* 309 Mass. 337, 349-350 (1941). The probate judge, on stipulated facts and a motion for summary judgment, ordered that the bank charge the payments made from principal to or for the benefit of Julius or his wife, Hester, in the amount of $102,296.07, under a hotchpot computation, against the share of the principal of the trust ultimately distributable to the issue of Julius.

The settlor provided that, upon termination of the trust, "the Trustee shall transfer and pay over the trust property to my issue then living per stirpes." The power to invade principal appeared in paragraph 5 which provided:

"After my death the Trustee shall from time to time pay or apply to or for the benefit of any one or more of

my said children for such extraordinary or emergency purposes including medical expenses as the corporate Trustee may deem proper, such amount from the principal of the trust as the corporate Trustee may deem necessary or advisable, but such payments shall not affect the share of income to which the recipient or those claiming, through her or him shall thereafter be entitled." [2]

In 1967, the bank invaded principal to pay $10,000 to Julius so that he might pay business debts. From 1974 through 1977, the bank invaded principal in the amount of $13,485.96 for medical (including nursing) expenses incurred by Julius. The bank made a further invasion in the amount of $5,636 to buy and install an elevator in Julius's residence. Between December, 1977, and September, 1979, the bank invaded principal in the amount of $73,174.38 for medical (including nursing) expenses incurred by Julius and his wife Hester. The propriety of the payments out of principal was not argued in the Probate Court for the reason that if the payments to Julius were charged to that quarter of the trust estate to be distributed to his issue, the question whether the bank had correctly exercised its authority to

---

[2] Pertinent portions of paragraphs 4 and 6 of Philias Morin's trust, are as follows:

"4. . . . the Trustees after my death shall pay the net income of the trust at least quarterly to my four said children, or such of them as shall be living at the time of each such payment or then deceased with issue then living, in equal shares, the then living issue of any of them then deceased to take per stirpes the share which such deceased child would have received if living, until the termination of the trust, provided that after the death of any of my said sons his widow if any shall during her life take the share which he would have received if living."

"6. This trust shall terminate at the death of the last survivor of my said four children and my said sons' widows, if any, and thereupon the Trustees shall transfer and pay over the trust property to my issue then living per stirpes, or in default of any such issue to the persons to whom and in the respective shares in which my net estate would have been distributable had I then died intestate and domiciled in Massachusetts."

invade principal might be moot. For that reason the judge, acting under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), certified his determination that there was no just reason for delay and directed entry of final judgment. We need only consider whether the settlor intended a permissible invasion of principal to be charged to the one-fourth of the trust estate to be distributed to the issue of the child of the settlor who benefited from the invasion. In searching for the settlor's intent, we have reference to the language of the whole instrument considered in light of circumstances known to the settlor at the time of its execution. *Dana* v. *Gring*, 374 Mass. 109, 117 (1977). *Groden* v. *Kelley*, 382 Mass. 333, 335 (1981). The stipulated facts do not touch on circumstances known to the donor when he made the declaration of trust, and we are remitted entirely to the text of the instrument.

After making provision for payment of specific dollar amounts to his four children and after providing that his nurse should have living quarters and a modest income, the settlor directed that net income of the trust be paid "to my four said children . . . in equal shares, the then living issue of any of them then deceased to take per stirpes the share which such deceased child would have received if living . . . provided that after the death of any of my said sons his widow if any shall during her life take the share which he would have received if living." There then followed the invasion provision previously adverted to, and then the provision for final distribution to the issue of each child per stirpes, without any provision for charging invasions of principal to the portion of the child of the settlor benefited.

The settlor's two goals — to provide equally for his four children, but to defray the extraordinary expenses of any one of them — are not inconsistent. See *Boston Safe Dep. & Trust Co.* v. *Johnson*, 326 Mass. 664, 666-667 (1951). That the settlor intended that accommodation draws support from his specific instruction that "such [extraordinary] payments shall not affect the share of income to which the recipient or those claiming through her or him shall thereafter

be entitled" and by the absence of any express wish that those payments be charged against principal. Contrast *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 214 (1964). The correct construction of the trust document is a great deal less than obvious. We have not, however, found any authority for the proposition that the estate of the beneficiary should be charged with invasions of principal on behalf of that beneficiary when the document fails to communicate such an intent. We are unwilling, as the appellees urge, to infer that, because the settlor expressed his wish not to have invasions of principal affect the income paid to beneficiaries during the existence of the trust, he must have intended a different approach upon final distribution of principal. Rather, the limited power to invade principal, i.e., for "extraordinary or emergency purposes," assists us in concluding that the settlor desired that vital needs of his children be met without effect upon the ultimate distribution of the remainder. An intent to change a beneficiary's interest in a trust may be more plausibly inferred when a settlor provides for a more liberal power to invade principal than is here the case.

In order for distributions to be considered advances in either intestate succession or under a legacy, the intention to charge the beneficiary must be clearly expressed. G. L. c. 197, § 25A, and G. L. c. 196, § 5. See generally Newhall, Settlement of Estates §§ 240 and 252 (4th ed. 1958). Construing distributions from principal in the instant case as an advance would require us to read into the instrument a provision that is not there. See *Dumaine* v. *Dumaine*, 301 Mass. 214, 222 (1938); *Boston Safe Deposit & Trust Co.* v. *Stebbins*, 309 Mass. 282, 287 (1941).

No case has been called to our attention, nor have we found any, in which a properly authorized payment from principal has been charged against the estate of the beneficiary without an express provision for such a charge. See *Smith* v. *Haynes*, 202 Mass. 531, 534-535 (1909); *Boston Safe Deposit & Trust Co.* v. *Stebbins*, 309 Mass. at 287; *Boston Safe Deposit & Trust Co.* v. *Johnson*, 326 Mass. at

666-667; *Hartford Natl. Bank & Trust Co.* v. *Turner,* 21 Conn. Supp. 437, 442-443 (Super. Ct. 1959).

We intimate no opinion whether the payments from principal to Julius were lawfully or unlawfully made. If wrongful, they are susceptible to recovery from the bank. That children of Julius benefited from the invasions of principal on behalf of Julius because those invasions provided Julius with funds which enabled him to avoid depletion of his own resources may, perhaps, have a bearing on that question, but it does not bear on construction of the instrument. Those invasions of principal occurred long after the instrument was executed.

The judgment is reversed, and a new judgment is to enter instructing the bank that upon termination of the trust, the trust property then remaining shall be distributed among the issue of the settlor then living, per stirpes, without regard to the amounts of principle previously paid to or for the benefit of Julius or his wife Hester.

*So ordered.*