MICHAEL CROWLEY *vs.* PARKER W. WHITTEMORE & others, administrators.

Suffolk.    January 4, 1926. — February 26, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* What constitutes.    *Frauds, Statute of.*

A widow, whose husband had made an enforceable agreement in writing to pay C $10,000, urged C, who was threatening to contest the husband's will on the ground that he was not named therein, not to do so, and signed a writing as follows: "The promise of my husband to C, or provide that sum ten thousand dollars with interest, will be made good, my estate is bound in honor, my husband and self to pay same the above is a promise I make." C then said "that he would not do what he was going to do and would stick to what he said." *Held,* that C had no claim against the widow or against her estate after her death, because her promise was not made to him in consideration of any act or forbearance to act of his at her request.

An oral promise by a daughter of the widow above described, who was a niece of the widow's husband, to pay C's claim against her mother "out of my own share," in consideration that C would not "bother" her mother, is not enforceable if it does not appear that the daughter had a share or received anything from her share which could be appropriated to the satisfaction of the claim.

The claim by C against the daughter, above described, also was unenforceable under G. L. c. 259, § 1, cl. 2, because it was a promise to pay an alleged debt of the mother and was not in writing.

It is not a sufficient ground to prevent the operation of the statute of frauds, that the plaintiff has relinquished an advantage or given up some lien or claim in consequence of the defendant's promise, if that advantage or relinquishment did not also directly enure to the benefit of the defendant: it is only when such relinquishment or surrender operates to transfer to the defendant the right, interest or advantage which the plaintiff gives up, or to create in the defendant some title or benefit derived from that which the other party surrenders, that the promise can be regarded as an original undertaking and not within the statute.    Per PIERCE, J.

CONTRACT for $10,000 and interest.    Writ dated March 18, 1919.

The declaration is described in the opinion.    The action was tried in the Superior Court before *Macleod,* J.    Material

evidence is described in the opinion. By order of the judge, a verdict was entered for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*W. F. Mackernan & C. H. Dow,* for the plaintiff.

*W. Flaherty, N. W. Bingham, Jr., & G. S. Fuller,* for the defendants.

PIERCE, J. This is an action of contract against the defendants as administrators of the estate of Emma J. Sinclair, who died intestate at Gloucester, Massachusetts, on February 19, 1918.

The plaintiff's claim, set forth in his declaration, is that the intestate "promised the plaintiff that, if he would promise to forbear to institute legal proceedings and bring any action at law against the executors or estate of . . . Martha S. Jones [the mother of the intestate], and would forbear to institute and bring such proceedings and action, she, . . . Emma J. Sinclair, would pay to the plaintiff said sum of ten thousand ($10,000.) dollars and said interest; that the plaintiff, in consideration of said promise of said Emma J. Sinclair and relying thereon promised so to forbear and forbore to institute any legal proceedings and to bring any action at law against said executors or the estate of said Martha S. Jones, but that said Emma J. Sinclair up to the time of her death failed to pay the plaintiff said ten thousand ($10,000.) dollars and said interest." The answer of the defendant is a general denial and the statute of frauds.

"At the close of the plaintiff's evidence, the plaintiff having rested, the defendants made a motion in writing that upon all the evidence a verdict be ordered for them." The judge allowed the motion and by his direction the jury returned a verdict for the defendants, subject to the plaintiff's exception. This was the only exception saved by the plaintiff. The only question before this court is, Was the trial judge right in directing such verdict?

The encompassing facts which led up to and attended the making of the alleged promise, on the evidence reported, could have been found warrantably to have been in substance as follows: On September 15, 1893, one Frank Jones,

husband of Martha S. Jones referred to in the declaration above quoted, executed and delivered to the plaintiff a paper containing the words, "I promise to pay Michael Crowley the sum of ten thousand dollars, $10,000.00 and interest if he abstains from drinking any liquor, for the next ten years, my estate is bound to pay the same, if I pass away during that time the men or trustees will pay him"; and said, "Michael, you are well protected in my will." Frank Jones died testate October 2, 1902, without provision for the plaintiff in his will. The plaintiff abstained from drinking any liquor for ten years after September 15, 1893. After the expiration of the ten years, he made repeated demands on the executor of the will of Frank Jones to pay him the said sum of $10,000, without avail.

On September 18, 1903, the plaintiff saw Mrs. Jones and said to her in substance that the will of Frank Jones was not his will, that he was going to contest it, because he "was in" a prior will. Mrs. Jones replied, "Don't contest it . . . I have had trouble enough . . . you are right, but don't, for God's sake, do it." The plaintiff then showed Mrs. Jones the written promise of Frank Jones, and Mrs. Jones executed and delivered to the plaintiff the paper in evidence, dated September 18, 1903, which reads: "The promise of my husband to Michael Crowley, or provide that sum ten thousand dollars with interest, will be made good, my estate is bound in honor, my husband and self to pay same the above is a promise I make." The plaintiff then said "that he would not do what he was going to do and would stick to what he said," to which Mrs. Jones replied, in substance, that he might as well keep the paper, that she could pay him then on the note, but she was giving him the paper "because it would be a better investment and you will be getting 6% here than you would by putting it into something and losing it by speculation." After September 18, 1903, the plaintiff saw Mrs. Jones at different times and places up to a year before her death on January 1, 1914, but "did nothing about collecting that debt, the $10,000, and made no demand of her, because of previous arrangements with her." There is no evidence reported to the effect that Mrs. Jones made

any promise other than the one contained in the writing dated September 18, 1903.

Mrs. Sinclair, the defendants' intestate, was a niece of Frank Jones, not a daughter. There is no evidence that either she or Mrs. Jones was entitled to receive anything under his will, nor is there evidence that Mrs. Sinclair was entitled to receive anything under the will of Mrs. Jones.

Two or three months before the death of Mrs. Jones, the plaintiff went to Gloucester (where Mrs. Jones and Mrs. Sinclair lived) to see Mrs. Jones, but could not see her, and was told by Mrs. Sinclair that Mrs. Jones was too feeble to see him. Before the death of Mrs. Jones, the plaintiff telephoned from the railroad station at Gloucester, and said to Mrs. Sinclair that he wished to see Mrs. Jones, to which Mrs. Sinclair replied, "Mother is too sick." "Don't bother mother. . . . You drop the claim, Michael, and I will pay it myself." "Michael, you drop the claim from mother and I will pay it out of my own share." " . . . if I would give up the claim of that she would pay it out of her own share." After Mrs. Jones's death and after the qualification of Mrs. Sinclair as executrix of Mrs. Jones's will, Mrs. Sinclair told the plaintiff to see the executor of Frank Jones's estate about his claim, which he and Mrs. Sinclair "agreed . . . was against the estate of Martha Jones or against the estate of Frank Jones," saying, "Michael, I will see that that is paid, and I will do it myself if they don't fix you." The plaintiff saw the executors Page and Whittemore and they said "Well, we will see, we will try and fix it up."

On January 31, 1916, the plaintiff wrote a letter, which was received by the trustees of the Frank Jones estate, wherein in substance he stated he had a claim of $325,000, including the $10,000 claim in suit, against the estate of Frank Jones. This claim was abandoned by the plaintiff after it was given to Page, Whittemore and Merrill at their office. Between December 21, 1915, and February 19, 1918, the day of the death of Mrs. Sinclair, the plaintiff did not see her or make demand on her for his claim. After her death the plaintiff before action made no written demand

and there is no evidence of any oral demand on the administrators of the estate of Emma J. Sinclair.

The direction of the verdict for the defendants was right. On the evidence, the plaintiff had an enforceable legal claim against the estate of Frank Jones. He had no legal claim against Mrs. Jones or against her estate, because her promise in the document of September 18, 1903, was not made to him in consideration of any act or forbearance to act of his at her request.

The promise of Mrs. Sinclair, in the lifetime of her mother, to pay the claim of the plaintiff against her mother "out of my own share," in consideration that the plaintiff would not "bother" her mother, is not enforceable, because there is no evidence that Mrs. Sinclair had a share or received anything from her share which could be appropriated to the satisfaction of the claim; and because the promise is a promise not in writing to pay the alleged debt of her mother. G. L. c. 259, § 1, cl. 2. The promises of Mrs. Sinclair after the death of the mother are each of them a promise to pay the plaintiff's claim against her mother, and not to pay a sum of money equal to the amount of money claimed to have been due from the mother or from the estate of Frank Jones.

It is perfectly well settled that it is not sufficient ground to prevent the operation of the statute of frauds, that the plaintiff has relinquished an advantage or given up some lien or claim in consequence of the defendant's promise, if that advantage or relinquishment did not also directly enure to the benefit of the defendant. It is only when such relinquishment or surrender operates to transfer to the defendant the right, interest or advantage which the plaintiff gives up, or to create in the defendant some title or benefit derived from that which the other party surrenders, that the promise can be regarded as an original undertaking and not within the statute. *Dexter* v. *Blanchard*, 11 Allen, 365. *Curtis* v. *Brown*, 5 Cush. 488, and cases cited. *Griffin* v. *Cunningham*, 183 Mass. 505. *George Lawley & Son Corp.* v. *Buff*, 230 Mass. 21.

*Exceptions overruled.*