RICHARD DUCA vs. MILTON E. LORD, executor.

Suffolk.   November 5, 1953. — January 15, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Frauds, Statute of.   Contract*, What constitutes, Construction, Building contract.

The provision of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Second, respecting "a special promise to answer for the debt . . . of another" has no application if no primary obligation or liability on the part of the other person exists.   [53]

Trustees of a library to whom real estate was transferred in trust and who made with a builder a written contract for repair of the property which was fully performed were not obligated to the builder for extra work done by him on the property where the negotiations therefor were carried on with him by the transferor of the property without consulting the trustees and without their authority and there was no express contract for the extra work between the builder and the trustees, although the trustees knew that the extra work was being done.   [54]

In the circumstances, where a building contractor and one who had transferred real estate to the trustees of a library in trust and who thereafter negotiated with the builder for repair work on the property both knew that no contract for the work existed between the builder and the trustees but expected that the trustees would assume the obligation for the work, a promise made by the transferor to the builder, "If the library doesn't pay you, I will pay you," meant that the transferor was to pay if the trustees did not, whether or not they assumed the obligation, and made the transferor liable to the builder for the value of the work upon the trustees' refusing to assume the obligation.   [55–56]

CONTRACT.   Writ in the Superior Court dated December 4, 1951.

The action was heard by *Swift*, J., upon an auditor's report.

*Frank W. Crocker*, (*Howard E. Houston* with him,) for the defendant.

*James M. Graham*, for the plaintiff.

SPALDING, J.   This is an action of contract to recover
the fair value of labor and materials allegedly furnished by
the plaintiff at the request of the defendant's testator. The
defendant's answer sets up several defences, but the only
one now relied on is that the plaintiff is seeking to recover
"upon a special promise to answer for the debt, default or
misdoings of another" which, because not in writing, is
within the statute of frauds. G. L. (Ter. Ed.) c. 259, § 1,
Second. The case was referred to an auditor whose findings
of fact were to be final. After the auditor's report was filed,
each party moved for judgment on the report. The judge
granted the plaintiff's motion and denied the defendant's
motion. The defendant appealed. G. L. (Ter. Ed.) c. 231,
§ 96. *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206, 207.

The facts found by the auditor are these: John Defer-
rari, the defendant's testator (hereinafter called Deferrari),
transferred title to a parcel of real estate at 19 Bowdoin
Street, Boston, to the trustees of the Boston Public Library
(hereinafter called the trustees) "under the John DeFerrari
Indenture of Trust dated December 13, 1948." Deferrari
and the plaintiff had a conversation with respect to repair-
ing the property, and Deferrari told the plaintiff that "a
man from the library . . . would see [him]." On October
24, 1949, a written contract was entered into between the
plaintiff and the trustees for the repair of the property for
the sum of $9,500. Prior to the execution of this agreement
the plaintiff refused to do any work until Deferrari had
assured him that if the library did not pay him he (De-
ferrari) would.[1]  Thereafter the plaintiff proceeded with the
work. The written contract was fully performed by both
the plaintiff and the trustees.

It is agreed that in addition to the requirements of the
written contract the plaintiff furnished in connection with
the repair of the property other labor and materials the
fair and reasonable value of which is $10,176. All the
work, both under and outside the written contract, was

---

[1] The auditor found that in conversations between the plaintiff and De-
ferrari "the word 'library' was used interchangeably with the word 'trustees.'"

done under the direction of Deferrari and "was checked" by one Starr, deputy assistant to the director of the library. When the plaintiff asked Deferrari for money for the extra work and materials, as he did on several occasions, Deferrari replied, "If the library doesn't pay you, I will pay you." These replies were never in writing. On December 14, 1949, the plaintiff wrote a letter to the trustees in which he stated that he realized his contract was with the trustees, and that the expenditure for extra work was not contemplated when the contract was signed. Deferrari died in April of 1950. On November 29, 1950, the plaintiff sent a letter to the trustees stating that Deferrari had "guaranteed" payment of the extra charges, and a letter of similar import was sent to the trustees on June 8, 1951. Both Deferrari and the plaintiff "expected the trustees to pay for the labor and materials furnished outside of the written contract, and that if the trustees failed to pay for the same" Deferrari would do so. The plaintiff did not bill anyone for this work. Deferrari had no authority to bind the trustees for the extra work and materials, and the trustees denied all liability for them. The auditor found for the defendant.

We are of opinion that Deferrari's promise was not within the statute of frauds. To come within the statute it must be a promise "to answer for the debt, default or misdoings of another." G. L. (Ter. Ed.) c. 259, § 1, Second. "It is essential that a primary obligation of some kind shall be incurred in order to bring the case within the Statute." Williston on Contracts (Rev. ed.) § 454. If liability on the part of the person for whose debt one has promised to answer never existed, the statute has no application. *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, 234. *Seder* v. *Kozlowski*, 304 Mass. 367, 370. *Lakeman* v. *Mountstephen*, L. R. 7 H. L. 17, 24–25. Restatement, Contracts, § 180. The defendant directs our attention to the case of *Crowley* v. *Whittemore*, 255 Mass. 99, as authority for the proposition that there need be no primary obligation in order to bring a promise of the sort under consideration here within the

statute.  But the statement at page 103 of the opinion,
which would appear to lend color to the defendant's con-
tention and for which no authority was cited, was not neces-
sary to the decision in that case.[1]  To the extent that it
can be considered as departing from the established prin-
ciple stated above we are not disposed to follow it.

Was there, then, any primary obligation by someone other
than Deferrari?  We are of opinion that there was not.
From the auditor's findings it is apparent that the plaintiff
and Deferrari entered into their negotiations for the extra
work without consulting the trustees.  Concerning the sub-
ject matter of these negotiations Deferrari had no authority
to bind the trustees.  There is no finding of any express
agreement between the plaintiff and the trustees for the
extra work.  Nor is it possible on this record to infer that
the trustees became obligated by implication because they
knew that the work was being done.  *LaChance* v. *Rigoli*,
325 Mass. 425, 427.  In short there was no obligation on the
part of the trustees to which Deferrari's promise could be
secondary.

Although a promise is not within the statute where there
is no primary obligation to which the promisor can add his
liability, it does not necessarily follow that the promisor
can be held.  In a leading English case (*Mountstephen* v.
*Lakeman*, 7 Q. B. 196[2]), Willes, J., referred to a situation of
persons wrongly supposing that a third person was liable,
and entering into a contract on that supposition.  He then
said at page 202, "If, in such a case, it turned out that the
third person was not liable at all, the contract would fail,
because there would be a failure of that which the parties
intentionally made the foundation of the contract.  The
lex contractus itself would make an end of the claim, and
not the application of the Statute of Frauds, whether the

---

[1] In that case the court had held that the alleged underlying agreement
was invalid, and it had also held the alleged collateral agreement invalid on
grounds other than the statute of frauds.  As an additional ground the court
went on to say that the promise was not enforceable because it was "a promise
not in writing to pay the alleged debt of her mother.  G. L. c. 259, § 1, cl. 2."

[2] Affirmed in L. R. 7 H. L. 17, sub nomine *Lakeman* v. *Mountstephen*.

contract was in writing or not, and whether signed or not."
Professor Williston, after quoting this statement, says, "It
is not, however, to be supposed that the failure of liability
on the part of any principal debtor necessarily involves the
conclusion that the promise of one who has promised to
be responsible collaterally also fails. The latter may have
made his promise to pay to meet precisely the contingency
that perhaps no one else would be liable, and if the terms
of the promise are wide enough to cover the situation which
has arisen, evidence of mutual mistake would need to be
clear in order to excuse liability." Williston on Contracts
(Rev. ed.) § 454.

The promise here was "If the library doesn't pay you,
I will pay you." Admittedly this is a form of promise
which is usually found in secondary or collateral agree-
ments. *Nelson* v. *Boynton*, 3 Met. 396, 400. *Stone* v.
*Walker*, 13 Gray, 613, 615. But "the real character of a
promise does not depend altogether upon the form of ex-
pression, but largely on the situation of the parties; and
the question always is, what the parties mutually under-
stood by the language, whether they understood it to be a
collateral or a direct promise." *Davis* v. *Patrick*, 141 U. S.
479, 489. Thus if the understanding of the parties was that
Deferrari was to pay if, and only if, the trustees assumed
the obligation and refused to pay, then Deferrari would not
be liable, for the contingency which the parties expressly
made the foundation of their contract never happened. On
the other hand, if the parties expected that the trustees
would assume the obligation but, whether they did or not,
Deferrari was to pay the plaintiff, then the promise is suffi-
ciently broad to render Deferrari liable.

While the question is not free from difficulty we are dis-
posed to favor the latter interpretation. There was no
mutual mistake here. This is not a case where the collateral
undertaking was entered into under the erroneous belief
that a primary obligation was in existence. It may fairly
be inferred that both the plaintiff and Deferrari knew at
the time they made their agreement that no contract cov-

ering the extra work was in existence between the plaintiff and the trustees. Nor is this a case where the parties intended that unless such a primary obligation came into existence there was to be no liability on the part of Deferrari. We think the true situation was that both parties hoped that the trustees would assume the obligation but if that hope was not realized then, in any event, Deferrari was to pay for the extra work.

*Order for judgment affirmed.*