RICHARD C. WEBSTER vs. SANFORD A. KOWAL.

Suffolk.   December 3, 1984. — April 8, 1985.

Present: HENNESSEY, C.J., LIACOS, LYNCH & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment. *Frauds, Statute of. Guaranty.*

A motion for summary judgment in a civil action was correctly denied where the record indicated a triable issue of fact as to whether an alleged oral agreement was subject to the Statute of Frauds. [444-445]

An agreement to answer for the debt of another would be governed by the Statute of Frauds even where the primary obligation was unenforceable by reason of the statute of limitations. [446-448]

In a physician's action to recover on an oral promise allegedly made by an attorney to guarantee payment of certain medical bills due the physician from his former patient, in exchange for the physician's expert advice and testimony in a civil action in which the attorney was representing the patient, it was error for the judge to preclude the jury from determining whether the agreement was collateral to the primary obligation and thus governed by the Statute of Frauds, or, alternatively, was primarily for the benefit of the attorney and therefore outside the statute. [448]

CIVIL ACTION commenced in the Superior Court Department on October 7, 1980.

The case was tried before *John L. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard W. Schwartzman* for the defendant.

*Lawrence F. O'Donnell* for the plaintiff.

LIACOS, J. The plaintiff, Richard C. Webster, a physician, commenced this contract action to recover on an oral promise allegedly made by the defendant attorney, Mr. Sanford A. Kowal. The complaint alleged that Mr. Kowal agreed to guarantee payment of certain medical bills due Dr. Webster in exchange for Dr. Webster's expert advice and testimony in a civil action in which Mr. Kowal was representing Dr. Webster's former patient, one Philip Soule, a minor at the time he

received his injuries. See *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177 (1979).

According to the alleged agreement, Soule's overdue medical bills, with interest, were to be paid out of any sums recovered in the event that Soule succeeded in his personal injury action. Dr. Webster further alleged that Soule prevailed in his action and recovered sums sufficient to pay the medical bills, but that neither Soule nor Mr. Kowal satisfied Dr. Webster's demand for payment of the bills. Mr. Kowal maintained that he agreed to pay Dr. Webster only an expert witness fee in exchange for Dr. Webster's testimony, and that he had paid that fee.

After Mr. Kowal's motion for summary judgment was denied, the case proceeded to trial before a jury. The jury returned a verdict for Dr. Webster in the amount of $24,468.02.[1] Mr. Kowal filed an appeal, and we transferred the case to this court on our own motion.

Mr. Kowal argues on appeal that the Superior Court judge erred in denying his motion for summary judgment, based on the Statute of Frauds. G. L. c. 259, § 1. He asserts that the alleged oral agreement was unenforceable as within the Statute of Frauds because it constituted a promise to answer for the debt of another.[2] He further argues that the judge erred in denying his motion for a directed verdict on the same basis, and erred in instructing the jury that the Statute of Frauds did not apply to the agreement because the medical bills were an unenforceable debt, barred by the statute of limitations. We believe that both the summary judgment and the directed verdict rulings were correct, but that the instructions given the jury were erroneous and prejudicial. Accordingly, we order a new trial.

1. *Summary judgment.* Mr. Kowal contends that (1) the Superior Court judge denied his motion for summary judgment

---

[1] Dr. Webster had sought $8,560 in unpaid medical bills, plus interest from 1961. The evidence was that a substantial portion of his original fee had been paid by the Soule family.

[2] The relevant portion of G. L. c. 259, § 1, is quoted *infra* at 446. It is undisputed that there was no writing within the meaning of the statute.

on the basis that there was a genuine question of material fact as to whether the Statute of Frauds applied, and (2) the denial is shown to have been in error because the judge later failed to instruct the jury on that issue, but rather ruled on the same issue as matter of law.[3] It is unclear from the docket entry and from notations made on the motion itself what reasoning supported the judge's denial. In any event, our reading of the record indicates a triable issue of fact as to the nature of any agreement between Mr. Kowal and Dr. Webster, and whether that agreement was within the Statute of Frauds. Mr. Kowal has conceded as much in his brief. The question whether the Statute of Frauds applies where Soule's debt is barred by the statute of limitations was not before the judge when he ruled on the summary judgment motion. Based on the record before him, the judge properly denied Mr. Kowal's motion for summary judgment. See Mass. R. Civ. P. 56, 365 Mass. 824 (1974); *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 553-556 (1976).

2. *Directed verdict.* Mr. Kowal next contends that the judge erred in failing to grant his motion for a directed verdict at the close of Dr. Webster's case,[4] because Dr. Webster presented no evidence which would take the oral agreement outside the Statute of Frauds so as to make the contract enforceable. Testimony had been introduced, however, which, if believed, would have demonstrated that Dr. Webster and Mr. Kowal had entered into a direct agreement, rather than a collateral one.[5]

---

[3] It is arguable that a challenge to the denial of a motion for summary judgment is foreclosed once the case has been fully tried. See *Schroeder* v. *Lawrence,* 372 Mass. 1, 4 (1977); Annot., 15 A.L.R.3d 899, 922-929 (1967). Cf. *Boyles Galvanizing & Plating Co.* v. *Hartford Accident & Indem. Co.,* 372 F.2d 310, 312 (10th Cir. 1967). Neither party has raised this question, and, consequently, we do not consider it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[4] Apparently, counsel for Mr. Kowal mistakenly submitted a motion under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), rather than a motion for a directed verdict under Mass. R. Civ. P. 50, 365 Mass. 814 (1974). The error was brought to the judge's attention. We assume that a timely motion for a directed verdict was submitted for purposes of ruling on this issue.

[5] See discussion, *infra,* on direct and collateral agreements and the Statute of Frauds.

On this basis a jury could have found the agreement to be outside the protections afforded by the Statute of Frauds. *Colpitts* v. *L.C. Fisher Co.,* 289 Mass. 232, 234-237 (1935). See *Howes* v. *Kelman,* 326 Mass. 696, 696-697 (1951). There was no error on this ground.

3. *Jury instructions.* The judge instructed the jury as follows: "As a matter of law, the Court is ruling that the original bill [of Soule's] in . . . 1961, was not enforceable. I think [plaintiff's counsel] told you that the statute of limitations is six years. It is. So, six years after 1961 it was not an enforceable debt. The Court is ruling that in 1976, or whatever the date was that Mr. Kowal and Mr. Webster got together that it was not an enforceable debt at that time. Therefore, the [S]tatute [of Frauds] does not apply and the agreement did not have to be in writing." Mr. Kowal argues that these instructions were erroneous.[6]

The pertinent portion of G. L. c. 259, § 1, the Statute of Frauds, reads: "No action shall be brought: . . . To charge a person upon a special promise to answer for the debt, default or misdoings of another . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." The question whether the statute applies where the underlying debt, or primary obligation, is barred by the statute of limitations, has not been addressed in any Massachusetts decisions.[7] The commentators apparently take opposing views. Professor Corbin states, "[T]he term [primary] 'obligation' . . . includes obligations that are voidable or *unenforceable,* so long as they are not also wholly void" (emphasis

---

[6] It appears that counsel for Mr. Kowal submitted logically inconsistent jury instructions. He asked both that the jury be instructed that the primary debt was extinguished and that the Statute of Frauds applied. He timely objected to the instruction given, again contending that the statute applied. We believe that he has preserved adequately his rights, and consider his argument on appeal. Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

[7] We assume, as did the parties to the instant case, that the debt was barred by the statute of limitations.

added). 2 A. Corbin, Contracts § 356 (1950). Professor Williston, on the other hand, posits that a primary obligation "must be a clear and ascertained legal liability *capable of enforcement*" (emphasis added). 3 S. Williston, Contracts § 454A, at 368 (3d ed. 1960). We believe that an agreement to answer for the debt of another falls within the Statute of Frauds even where the primary obligation is unenforceable by virtue of the statute of limitations. See *Cockrell* v. *Craugh,* 338 S.W.2d 516, 519 (Tex. Ct. App. 1960).

This approach is consistent with our view set forth in *Dexter* v. *Blanchard,* 11 Allen 365 (1865), that a debt may serve as a primary obligation for purposes of the Statute of Frauds where it is unenforceable by the creditor because the principal debtor is a minor. But see *King* v. *Summitt,* 73 Ind. 312 (1881). It appears that wholly void obligations, such as illegal contracts, ultra vires contracts, and, at common law, contracts with married women, cannot serve as primary obligations. See 2 A. Corbin, *supra*; 3 S. Williston, *supra* at §§ 454, 454A; C. Browne, Statute of Frauds § 156 (5th ed. 1895). On the other hand, "a voidable underlying obligation is usually deemed sufficient to qualify as a primary debt to render the collateral promise within the Statute of Frauds." *Lee* v. *Jenkins Bros.,* 268 F.2d 357, 372 (2d Cir. 1959). The same rule has been applied to ratifiable primary obligations, *id.,* primary obligations which are voidable because of fraud or duress, and primary obligations which themselves are unenforceable because of the Statute of Frauds. 2 A. Corbin, *supra.* Debts barred by the statute of limitations should be placed in the latter category since they, too, are not void but are merely unenforceable.

This view of unenforceable debts corresponds with our view of such debts in other contexts. See *Groden* v. *Kelley,* 382 Mass. 333, 336-337 (1981) (debt which had been discharged in bankruptcy deducted from share of trust provision); *Canton Lumber & Supplies, Inc.* v. *MacNevin,* 354 Mass. 563, 564 (1968) (discharge in bankruptcy does not extinguish debt but is merely a bar to its enforcement so that, by failing to bring discharge to the attention of the court, defendant waived the defense); *Elliott* v. *Warwick Stores, Inc.,* 329 Mass. 406, 408

(1952) (not an abuse of process to institute legal proceedings to collect a debt dischargeable in bankruptcy; a debt is not extinguished by a discharge in bankruptcy; the remedy and the legal obligation to pay are at an end, but debt itself not cancelled); *Boston Safe Deposit & Trust Co.* v. *Stebbins,* 309 Mass. 282, 285-286 (1941) (debts barred by statute of limitations deducted according to provision in a will); *Gillingham* v. *Brown,* 178 Mass. 417, 420-423 (1901) (new promise to pay debt said to waive bar of statute of limitations); *Allen* v. *Edwards,* 136 Mass. 138, 139 (1883) (through use of specific language, donor may provide for deduction of debts barred by the statute of limitations). A moral obligation to pay an unenforceable debt continues, see *Zavelo* v. *Reeves,* 227 U.S. 625, 629 (1913), and may place a promise collateral thereto within the statute.

The rule we follow here furthers the policy of the Statute of Frauds. "The fact that [a] creditor [has] no right to the expected performance [makes] the temptation to fabricate a promise by another perhaps stronger than in the ordinary guaranty where the creditor at least [has] a right to performance. Such cases are clearly within the intent of the statute." Arant, A Rationale for the Interpretation of the Statute of Frauds in Suretyship Cases, 12 Minn. L. Rev. 716, 723 (1928).

The judge's instructions improperly precluded the jury from determining whether any agreement between Dr. Webster and Mr. Kowal was one collateral to the primary obligation and thus within the Statute of Frauds, or was one whose primary purpose was to benefit Mr. Kowal and therefore outside the statute. See *Duca* v. *Lord,* 331 Mass. 51, 54-55 (1954); *Colpitts* v. *L.C. Fisher Co.,* 289 Mass. 232, 235 (1935).[8]

---

[8] In the conclusion of his brief, Mr. Kowal has raised the issue of the possible illegality of any promise by him to guarantee Soule's debt. Cf. S.J.C. Rule 3:07, Canon 5, DR 5-103, as appearing in 382 Mass. 779 (1981). Mr. Kowal failed to plead the affirmative defense of illegality in his answer, as required by Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974), and the judge properly struck that portion of his testimony. Mr. Kowal may not raise the issue for the first time on appeal. *Lougganes* v. *Plante,* 5 Mass. App. Ct. 790, 790-791 (1977). We note, however, that the agreement has not been shown to be violative of a fundamental principle of public policy. See *Three Sons, Inc.* v. *Phoenix Ins. Co.,* 357 Mass. 271, 277 (1970).

Accordingly, the judgment for the plaintiff is reversed, and the case is remanded for a new trial.

*So ordered.*