Toomey, J.
Plaintiff, Anthony J. DiStefano, M.D. P.C. (“DiStefano”) has brought suit against Defendant Joseph J. Cariglia, Esquire (“Cariglia”) asserting that Cariglia failed to pay for medical services DiStefano rendered to Cariglia’s clients. According to DiStefano’s complaint, Cariglia and he had an arrangement which involved Cariglia’s referring personal injury clients to DiStefano who would provide them medical attention and bill Cariglia therefor, the bills to be paid from the proceeds of Cariglia’s handling of the tort claims of the clients / patients.
Cariglia’s alleged failure to pay certain of DiStefano’s bills prompted the instant complaint which accuses Cariglia of breach of contract (Count I), promissory estoppel (Count II), breach of obligation to a third parly beneficiary (Count III), unjust enrichment (Count IV), monies had and received (Count V), defamation (Count VI), interference with business re *613 lationship (Count VII), and a violation of G.L.c. 93A (Count VIII). The complaint also seeks declaratory relief (Count IX). Cariglia has now moved to dismiss DiStefano’s complaint. For the following reasons, the motion will be DENIED.
BACKGROUND
DiStefano is a licensed medical doctor and a Massachusetts professional corporation with a residence and principal place of business in Worcester, Massachusetts. DiStefano alleges that, at all times relevant to the present action, he engaged in the general practice of medicine with a focus on the treatment of patients suffering from soft tissue injuries.
Cariglia is an attorney who does business as the Law Office of Joseph J. Cariglia, Esquire in Worcester, Massachusetts. Cariglia operated, and still operates, a law practice consisting primarily of representing plaintiffs who have been injured in motor vehicle, work-related and other types of accidents.
In about the mid-1980s, allegedly at Cariglia’s urging, the parties entered into an agreement which, DiStefano claims, provided that:
1. any of Cariglia’s personal injury clients, who became a patient of DiStefano’s for the treatment of personal injuries suffered as the result of an accident and who was pursuing a claim for personal injuries as a result of that accident, would be given full, complete and appropriate medical treatment by DiStefano, in accordance with his independent medical judgment;
2. any such patient would be informed by Cariglia and DiStefano that, by agreement, all medical bills would be carefully monitored and tabulated, but would not become due and payable until the time of a monetary recovery through settlement or resolution of the personal injury claim, if any;
3. DiStefano, if requested, and with the patient’s permission, would furnish appropriate and accurate medical reports of his patients to Cariglia on a fee for service basis, and the payment of said fees would be deferred until the time of monetary recovery, if any;
4. DiStefano would regularly inform Cariglia in writing regarding all amounts due; and
5. upon Cariglia’s receipt of funds representing a monetary recovery for any such client, DiStefano’s bills would be promptly paid from those funds and the client would be so informed.
According to DiStefano’s complaint, the parties confirmed their agreement through a lengthy course of dealing in which they conducted their affairs as described above. In reliance upon Cariglia’s alleged express promises and representations concerning payment, DiStefano continued to treat patients who were clients of Cariglia. Cariglia used DiStefano’s bills and reports in pursuing both Personal Injury Protection and damage claims on behalf of his personal injury clients. Cariglia represented to insurance companies and/or opposing counsel that DiStefano’s bills were fair, reasonable and should form part of the recovery payable to his clients. DiStefano asserted that the parties’ agreement covered hundreds of cases and patients at any one time.
DiStefano claims that, in late 1992 or early 1993, he learned for the first time that Cariglia had in fact settled or otherwise resolved several personal injury claims for those of his clients who were also DiStefano’s patients, but had failed to report the recoveries to DiStefano or satisfy DiStefano’s bills from funds received in connection with those claims. When DiStefano confronted Cariglia with this accusation, Cariglia became agitated and threatened DiStefano. With respect to some cases, however, Cariglia admitted his error by subsequently forwarding funds to DiStefano in satisfaction of the Doctor’s bills.
Despite their confrontation, Cariglia continued his failure to inform DiStefano of recoveries and to satisfy DiStefano’s bills. Cariglia further compounded his wrongdoing by affirmatively concealing from DiS-tefano, on a case by case basis, the fact that recovery had even been achieved on behalf of a client.
DiStefano also claims that, in a more recent effort to conceal his wrongdoing, Cariglia has lately engaged in a pattern of activity allegedly designed to undermine DiStefano’s relationships with his patients. According to DiStefano, this conduct has included Cariglia’s informing DiStefano’s patients that DiStefano is “incompetent” and has “overcharged” patients for his services. DiStefano claims that such statements made by Cariglia were false and untrue when made and were known by Cariglia to be untrue at the time he made them.
To date, DiStefano claims to have identified approximately $250,000 in bills which are due and outstanding for his treatment of patients with respect to whom Cariglia has already recovered monies as a result of personal injury claims. In addition, DiStefano claims to have identified in excess of $2,000,000 in receivables outstanding in connection with his care of patients who have pending claims which are being handled by Cariglia’s office. Cariglia has also forecast that he will not forward funds to satisfy DiStefano’s bills in the future.
DISCUSSION
A. Standard for Motion to Dismiss
When evaluating the sufficiency of a complaint in the context of a Mass.R.Civ.P. 12(b)(6) motion, the court must accept as true both the factual allegations of the complaint and any inference in the plaintiffs favor which can be drawn therefrom. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991); Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991) (All inferences should be drawn in the plaintiff s favor, and the complaint “is to be construed so as to do substantial justice . . .”). Plaintiffs complaint *614 should not be dismissed for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “A complaint is not subject to dismissal if it could support relief on any theory of law.” Whittinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (emphasis in original).
B.Counts I, II, III and IV: Breach of Contract, Promissory Estoppel, Third Party Beneficiary and Unjust Enrichment
The Statute of Frauds, G.L.c. 259, §1, requires that contracts to answer for the debt of another be in writing.[1] Although agreements between physicians and attorneys fall within that statutory mandate when the agreements are collateral to primary obligations, they fall outside the statute’s requirement of a writing when the agreement is primarily for the benefit of the attorney. Webster v. Kowal, 394 Mass. 443, 448 (1985) (physician’s action to recover on an oral promise allegedly made by an attorney to guarantee payment of certain medical bills due the physician from his former patient in exchange for physician’s services and expert opinion). Hence, the omission of the complaint to allege that the contract was reduced to writing presents no occasion for dismissal.
Counts I through IV all rest on the assertion that a valid contract exists between the parties. Cariglia’s further contention that the contract is unlawful and contrary to public policy does not, at this early stage of the litigation, eviscerate that allegation. A motion to dismiss, focused as it must be upon the four corners of the complaint, affords the court no opportunity to decide the legality and policy questions advanced by the defendant. The motion to dismiss Counts I through IV by reason of asserted illegality and policy violations is denied. See Webster, supra (error for judge to preclude jury from determining whether or not an agreement was primarily to benefit an attorney and therefore outside the Statute of Frauds).
C.Counts V. and IX: Monies Had and Received and Declaratory Judgment
In order to present appropriately a claim for monies had and received, plaintiff must allege that: (1) defendant has obtained money, (2) under circumstances that, in equity and good conscience, should be returned to plaintiff. Flower v. Suburban Land Co., Inc., 332 Mass. 30, 33-34 (1954).
Cariglia’s contention — that he cannot be held personally liable for his clients’ medical bills because he acts as an agent for his clients and has a duly, grounded in the attorney-client relationship, not to turn over clients’ funds — is not persuasive. Courts will recognize an attorney’s duty owed to a non-client if the attorney knows or has reason to know that the non-client is relying on the attorney’s commitments. See, e.g., Lamare v. Basbanes, 418 Mass. 274, 276 (1994), and cases cited therein. The instant complaint recites an actionable cause, and resolution of the further question of the existence of an enforceable contract between the parties must await submissions beyond the pleadings.
So too, the claim for declaratory relief is well pled and is not deserving of the early grave to which defendant’s motion would condemn it. The motion to dismiss, as to both Counts v. and IX, is, therefore, denied.
D.Count VI: Defamation
To assert a cause of action for slander the plaintiff must show: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to, at least, negligence on the part of the person or persons making the statement; and (4) either the actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the making of the statement. Restatement (Second) ofTorts §558 (1979). Where the statement is one of opinion, however, the statement is constitutionally protected and is not actionable defamation. Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379 (1988), citing King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 962 (1988). Accordingly, a “pure” opinion, that is, a statement based on disclosed or assumed nondefam-atory facts, is not actionable “no matter how unjustified and unreasonable the opinion may . be or how derogatory it is.” Pritsker v. Brudnoy, 389 Mass. 776, 778 (1983) (finding statement by restaurant critic that restaurant owners were “pigs” pure opinion). The question at bar is whether the complaint describes the offending statement as opinion (and thus protected) or as defamatory (and thus actionable).
In the present case, the complaint may fairly be read to allege that Cariglia’s statements — to wit, that DiStefano is “incompetent” and “overcharged” patients for his service — went beyond just “pure” opinion and constituted an actionable defamation. See Pritsker, supra at 778 (“mixed” statements of opinion and fact are actionable). Dismissal is inappropriate in such circumstances.
Cariglia’s additional contention that the alleged defamatory statements were privileged and thus not actionable is similarly unpersuasive. The attorney-client privilege adheres to communications between the attorney and the client or the client’s agents or employees. Ellingsgard v. Silver, 352 Mass. 34, 40 (1967). The “client” is the holder of the privilege and the privilege can only be asserted by or on behalf of the client. Bermingham v. Thomas, 3 Mass.App.Ct. 742, 742 (rescript) (1975). As it is unclear whether Cariglia is asserting the privilege on behalf of his clients or solely in his own interests and the record is not sufficiently developed at this stage to permit the court to ascertain whether the alleged defamatory statements were made in the course of privileged commu *615 nications, determination of the claim upon a motion to dismiss would be premature. Accordingly, the motion to dismiss Count VI will be denied.
E. Count VII: Interference With Business Relations
In order to claim an intentional interference with business relations, a complaint must assert: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant’s knowledge of such relationship [or contract]; (3) the defendant’s intentional interference generated by improper motive or means; and (4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815 (1990); Elm Medical Laboratory, Inc. v. RKO Gen., Inc., 403 Mass. 779, 787 (1989). The “essence of the tort is damage to a business relationship or contemplated contract of economic benefit.” Ratner v. Noble, 35 Mass.App.Ct. 137, 138 (1993). Those elements are sufficiently alleged by the complaint at bar and, therefore, the motion to dismiss Count VII must be denied.
F. Count VIII: G.L.c. 93A, §§2 and ll[2]
By asserting conduct by Cariglia that arguably constitutes “unfair and/or deceptive acts and practices,” the complaint is sufficient. Whether Cariglia’s actions rise to “a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce,” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979), is a matter for resolution by the trier of fact. The motion to dismiss Count VIII will be denied.
ORDER
For the foregoing reasons it is hereby ORDERED that Defendant Cariglia’s motion to dismiss be DENIED as to all counts of the Complaint.[3]

Massachusetts General Laws Chapter 259, §1 provides, in relevant part:
No action shall be brought: ... To charge a person upon a special promise to answer for the debt, default or misdoings of another; . . . Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Massachusetts General Laws Chapter 93A, §2 provides, in relevant part:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
Massachusetts General Laws Chapter 93A, § 11 provides a remedy for:
[A]ny person who engages in the conduct of any trade or commerce.

Notwithstanding the caption of the instant motion, this Order does not foreclose the presentation of a Motion for Summary Judgment, if appropriate, in the later course of this litigation.