Smith, J.
INTRODUCTION
Plaintiffs Charles and Marilyn Adler (the “Adlers”) brought an action against defendants Martin and Beverly Schultz, the Estate of Abraham Schultz and BankBoston. As against Martin and Beverly Schultz, the Adlers filed claims arising out of an alleged agreement between Martin and Beverly Schultz and Marilyn Adler to divide Abraham Schultz’s estate in two equal parts (the “50/50 Agreement”). As against the Estate of Abraham Schultz (“Abraham Schultz”), the Adlers asserted claims arising from Abraham Schultz’s alleged promise to make a gift to Marilyn Adler. Finally, as against all the defendants, the Adlers asserted claims arising from their capacities as trustees of trusts established by Abraham Schultz and Mollie Schultz, of which Marilyn Adler is a beneficiary. This court (Butler, J.) dismissed several counts on April 30, 1998. A Single Justice of the Appeals Court affirmed the dismissals. Martin and Beverly Schultz and the Estate of Abraham Schultz (the “Schultz defendants”) now move for summary judgment on all claims against Martin and Beverly Schultz arising out of the 50/50 Agreement. The Schultz defendants also move for summary judgment on the claims against Abraham Schultz of breach of contract, breach of implied covenant of good faith and fair dealing, and breach of a promise to make a gift. For the reasons set forth below, the motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The following undisputed facts are drawn from the summary judgment record. Plaintiffs Charles and *643 Marilyn Adler are husband and wife. Marilyn Adler and Martin Schultz are brother and sister, and they are the children of Abraham and Mollie Schultz. Martin Schultz is married to Beverly Schultz.
Abraham Schultz and BankBoston were trustees of the Abraham Schultz 1991 Trust (“Abraham Trust”). Upon the death of Abraham Schultz, Martin Schultz succeeded Abraham Schultz as trustee of the Abraham Trust, pursuant to the trust terms.
Abraham Schultz died on November 20, 1996. The will of Abraham Schultz was allowed and Martin Schultz was appointed executor. (Defendants’ Ex. A, B.) In his will, Abraham Schultz left the residue of his estate to the Abraham Trust. (Defendants’ Ex. A.)
The Abraham Trust provides that half of the trust principal remaining after payment of debts, administration expenses, estate taxes and a single $10,000 bequest, is to be distributed outright to Martin Schultz, and the remaining half is to be held in trust for the benefit of Marilyn Adler during her lifetime. (Defendants’ Ex. C.) The Abraham Trust authorizes the corporate trustee, BankBoston, to make payments of income and principal so as to “provide for Marilyn’s medical care and other living expenses, using as a guide the level of financial assistance the Donor provided during his lifetime.” (Defendants’ Ex. C, Article SIXTH.) The Abraham Trust expressly states that, insofar as possible, no money from the trust established for her benefit is to be used to benefit Marilyn Adler’s husband. (Defendants’ Ex. C, Article ELEVENTH (a).) Neither beneficiary may anticipate nor assign payments of income or principal and such payments shall be “free from interference or control by any creditor or spouse of the beneficiary.” (Defendants’ Ex. C, Article ELEVENTH (b).) The Abraham Trust provides that upon Marilyn Adler’s death, the remaining property of the trust established for her benefit is to be distributed to Martin Schultz if he is still living, or to the issue of Martin Schultz. (Defendants’ Ex. C, Article SIXTH.) If neither Martin Schultz nor his issue are alive, the trust property established for Marilyn Adler’s benefit is to be distributed to the Dana-Farber Cancer Institute. (Defendants’ Ex. C, Article NINTH.)
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. Where the party moving for summary judgment does not bear the burden of proof at trial, the movant must submit affirmative evidence negating an essential element of the nonmoving party’s case or show that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706. 716 (1991).
I. Claims Arising Out of the alleged 50/50 Agreement between Martin Schultz and Marilyn Adler
The Adlers claim breach of contract (Count I), fraud/misrepresentation (Count III), breach of implied covenant of good faith and fair dealing (Count IV), intentional interference with contractual relations (Count VII), negligent misrepresentation (Count XX) and intentional infliction of emotional distress (Count XXI) against Martin and Beverly Schultz. All these claims arise from an alleged agreement entered into prior to Abraham Schultz’s death between Martin Schultz and Marilyn Adler to “distribute and divide the assets [of Abraham Schultz’s estate] on an equal 50/50 basis between [Martin Schultz] and the Adlers." (Defendants’ Ex. J, No. 52.) Although the Schultz defendants dispute the existence of such an agreement, for purposes of this motion they assume, arguendo, the alleged agreement’s existence, but argue as a matter of law performance is impossible, thereby releasing both parties from their obligations and removing any right of the Adlers to claim damages for breach.
The Adlers attack the impossibility defense on the basis that the Schultz defendants waived it by their failure to so plead as an affirmative defense in their answer. They further contend that even if it was not waived, the impossibility defense is inapplicable. The Adlers also maintain that the defendants misconstrue their claims as claims against the Abraham Schultz Estate and/or Trust when the claims are damage claims against Martin and Beverly Schultz individually. Finally, they contend that the impossibility defense does not respond to the fraud/misrepresentation claim, Count III.
Pursuant to Mass.R.Civ.P. 8(c), affirmative defenses must be raised in the answer. The Adlers fail to cite an authority which supports their claim that impossibility is an affirmative defense. The case they cite, Webster v. Kowal, 394 Mass. 443 (1985) applies the affirmative defense pleading requirement of Mass.R.Civ.P. 8(c) to the defense of illegality, not impossibility. Rule 8(c) enumerates several affirmative defenses, among them illegality but not impossibility. See also 17 Richard Bishop, Mass. Practice Series: Prima Facie Case — Proof and Defense §2.82 (categorizing “impossibility” as “other defense” as opposed to “affirmative defense”). Accordingly, the Schultz defendants’ defense of impossibility is properly raised in its motion for summary judgment. The question *644 before the court becomes whether performance is impossible.
The essence of an impossibility defense is that “the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injuiy, or loss involved, rather than that it is scientifically or actually impossible.” Mishara Construction Co., Inc. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128 (1974), quotingWilliston, Contracts (Rev. ed.) §1931 (1938). The Schultz defendants argue that the Abraham Trust terms and trust law principles make performance impossible.
The Schultz defendants point to language in the Abraham Trust that establishes the trust’s purpose with respect to Marilyn Adler and a spendthrift clause. They assert that the settlor’s purpose, stated in Article SIXTH, is to “provide for Marilyn’s medical care and other living expenses.” Relying on established trust principles, the Schultz defendants correctly state that Martin Schultz cannot terminate the trust, even by agreement with Marilyn Adler, if continuance is necessary to carry out trust purposes. See Allen v. First Nat’l Bank & Trust Co., 319 Mass. 693 (1946) (trust cannot be terminated if all its objects and purposes have not been accomplished, notwithstanding that all parties beneficially interested desire its termination). Until Marilyn Adler dies, this purpose is not accomplished. Id. at 697. See also West v. Third Nat’l Bank of Hampden County, 11 Mass.App.Ct. 577, 579-80 (1981) (holding that beneficiary of a life estate in a testamentary trust could not terminate the trust where the testator’s clear intent to provide support throughout her lifetime had not been fulfilled).
Similarly, the existence of spendthrift language in Article ELEVENTH (b) bars termination of the trust by agreement between the beneficiaries because where the interest of the life beneficiary is inalienable, the trust may not be terminated even though all beneficiaries desire to terminate. See 4 Scott, Trusts, §337.2 at 445-48 (4th ed. 1989). Outright distribution to Marilyn Adler would place her half of the trust corpus within reach of her creditors, contrary to the expressed intent of the settlor. Consequently, as a matter of law Martin Schultz cannot terminate the Abraham Trust such that Marilyn Adler receives her share outright, regardless of his alleged agreement so to do. Such a situation falls within the scope of impossibility. Mishara Construction Co., Inc., 365 Mass. at 128. The court is not convinced by the Adlers’ suggestion, offered with no supporting law, that Marilyn Adler “resign" her interest in the trust, allow Martin Schultz to receive her interest as sole remainderman and in turn, transfer his 50% interest to Marilyn Adler. Even if the spendthrift language permitted such a transaction, it is clearly contrary to the Abraham Trust’s purpose of providing for Marilyn Adler’s medical and living expenses during her lifetime.
Having decided that as a matter of law performance of the alleged agreement between Marilyn Adler and Martin Schultz is impossible, the court need not consider alternative grounds for impossibility nor the Adlers’ opposition to same. The Adlers’ argument that they seek damages for claims raised against Martin and Beverly Schultz individually and are not raising claims against the Abraham Trust or Estate overlooks the rule that where there is impossibility, both parties are released from performance and neither may claim damages from the other. Boston Plate & Window Glass Co. v. John Bowen Co., Inc., 335 Mass. 697, 700 (1957).
In summary, the Schultz defendants show that as a matter of law the breach of contract claim against them should be dismissed. Their motion for summary judgment on Count I is allowed. Further, because as matter of law where there is no contract, there can be no implied covenant arising therefrom. See Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). Accordingly, summary judgment is ALLOWED on the breach of implied covenant of good faith and fair dealing claim, Count IV.
As to the fraud claim, the Adlers assert that because the defendants’ impossibility defense is a contract defense it cannot defeat their fraud claim. The Schultz defendants do not address the fraud claim specifically in their motion for summary judgment, nor do they address the claims of intentional interference with contractual relations, negligent misrepresentation or intentional infliction of emotional distress. Accordingly, summary judgment for the Schultz defendants is DENIED on these claims.
II. Claims Arising out of the Alleged Oral Promises of Abraham Schultz to Marilyn Adler
The Adlers allege breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count TV), and breach of a promise to make a gift (Count X) against Abraham Schultz. These claims arise out of alleged statements and promises by Abraham Schultz to the Adlers that he had placed several million dollars worth of life insurance policies in Marilyn Adler’s name or had named her as the beneficiaiy, and that he had set aside at least ten million dollars in their names for the purchase of a hotel valued at ten million dollars. Upon the death of Abraham Schultz it became evident that he failed to perform either of the alleged promises.
The Schultz defendants dispute the existence of the alleged promises, but assume their existence arguendo and maintain that all three claims must be dismissed based on the Statute of Frauds requirement that a promise to make a devise must be supported by a signed writing. Additionally, the Schultz defendants contend that the contract claim is not viable due to vagueness of terms and lack of consideration, and the breach of promise to make a gift claim fails because *645 such a promise is unenforceable until the gift is actually made.
The Adlers dispute the applicability of the Statute of Frauds, contending that the claims arise from promises completed and effectuated during the promisor’s lifetime. They oppose the vagueness defense with three arguments: 1) vagueness is an affirmative defense that the defendants waived, having failed to plead it in their answer; 2) the terms of the promises were not fatally indefinite; and 3) even if the terms were vague, the court must effectuate the reasonable intent of the parties. As to the lack of consideration defense, the Adlers assert there was sufficient reliance on the promises to constitute consideration. Finally, the Adlers argue that the Schultz defendants misstate the law with regards to their contention that a promise to make a gift is unenforceable unless the gift is actually made.
A. Applicability of the Statute of Frauds
The Schultz defendants maintain that the deposition testimony of Charles Adler and Abraham Schultz’s driver, Robert Keefe, Jr., establish that Abraham Schultz’s promises to Marilyn Adler were to set aside money that she would receive at his death.[4] As such, these were promises to devise which require a writing pursuant to G.L.c. 259, §5, the Massachusetts Statute of Frauds.
The Adlers rely on King v. Trustees of Boston University, 420 Mass. 52 (1995), to support their argument that Massachusetts law distinguishes between a promise to leave assets in the future through a will and a current promise to provide a gift, whether at some future point or only upon death of the promisor. The Adlers contend that Abraham Schultz never made a promise to make a devise but rather agreed that he had already transferred millions of dollars and life insurance policies to Marilyn Adler’s name and promised to make those gifts to her. As evidence, the Adlers offer affidavits of Robert Keefe, Jr. and Charlotte Kirshner, Jeffrey Koster, and Hyman Rottenberg.[5] (Plaintiffs’ Ex. 9.)
The Adlers also offer as evidence statements of fact in their memorandum opposing summary judgment by way of a blanket affidavit in which they state that all facts set forth in their opposition to the Schultz defendants’ motion for summary judgment are true and based on personal knowledge or deposition transcripts. This affidavit does not meet the requirements of Mass.R.Civ.P. 56(e) that the opponent to a motion for summary judgment must set forth by affidavit specifi.cfa.cts showing there is a genuine issue for trial. (Emphasis added.) The Adlers’ blanket affidavit does not indicate which sentences or phrases in the memorandum are statements of fact, as opposed to argument or conclusion. Accordingly, the court sua sponte strikes this affidavit.
To counter the defendants’ statute of fraud argument, the Adlers may not rely on their pleadings, but must come forth with specific facts to create a triable fact. Pederson v. Time, Inc., 404 Mass. at 17. Absent affidavits from the plaintiffs, with whom Abraham Schultz allegedly made an agreement and promises, the record is devoid of evidence from either party to the agreement/promises as to the alleged terms. Testimony from parties that overheard the father make certain statements to his daughter and son-in-law and testimony that the father told third parties that he had made certain statements is insufficient to establish even a question of fact as to the existence of any alleged agreement/promises between Abraham Schultz and the Adlers irrespective of whether these agreements concerned a devise or future gift. The defendants’ motion for summary judgment is ALLOWED.
B. Other Defenses
The court’s determination that the affidavits by the Adlers’ witnesses fail to establish a triable fact as to the alleged agreements/promises between them and Abraham Schultz removes the need to consider alternative arguments for and against summary judgment. The court notes, nevertheless, that even assuming such agreements, the defendants’ arguments have merit.
As to vagueness, for the same reasons discussed above, it is not an affirmative defense and therefore never waived by the defendants. Evaluating the affidavits offered by the Adlers’ witnesses with respect to definiteness, it can only be determined that Abraham Schultz allegedly set aside “millions” of dollars for Marilyn Adler, through life insurance policies or otherwise, and allegedly would “soon” deed a condominium to the Adlers. This language falls far short of the requirement that “(a]ll the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained.” Hastings Associates, Inc. v. Local 369 Building Fund, Inc., 42 Mass.App.Ct. 162, 171 (1997), quoting Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523 (1957). Nor is this a situation where construction of the transaction in light of the circumstances permits ascertainment of the meaning with “reasonable certainty,” such that the promise should not be held unenforceable. Simons v. American Dry Ginger Ale Co., 335 Mass. at 523. The Adlers offer affidavit testimony of witnesses to the effect that Abraham Schultz wanted to provide for his daughter after his death. In light of the Abraham Trust distributions to Marilyn Adler during her life to “provide for [her] medical care and other living expenses, using as a guide the level of financial assistance the Donor provided during his lifetime,” it is not reasonable to construe the alleged agreement/promise to include the life insurance policies and condominium purchase money as the Adlers claim. It is more reasonable to conclude that if Abra *646 ham Schultz indeed made a promise, he performed it by the terms of his trust.
As to the lack of consideration defense, the Adlers contend that their reliance constitutes consideration. As evidence of reliance, they cite to their failure to purchase life insurance and to plan for retirement. This argument fails because it does not constitute reasonable reliance, as no jury would find this conduct reasonable. See Loranger Construction Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760 (1978) (reliance on promise must be reasonably expected by promisor). Cataldo Ambulance Service, Inc. v. Chelsea, 426 Mass. 383, 387 (1998) (reasonableness of a party’s reliance on a promise by another may be a question of law).
If the Adlers had demonstrated a question of fact as to the promise to make a gift, they do not offer evidence that they acquired dominion over the property. As a matter of law such a promise is unenforceable because the gifts were never made. Kobrosky v. Crystal, 332 Mass. 452, 460 (1955). The court declines to extend, as the plaintiffs suggest, the King decision to all promises to make a gift. King v. Trustees of Boston University, 420 Mass. 52 (1995) (case concerning a written promise to transfer personal papers to university at some future date or upon promisor’s death was properly presented to the jury on a charitable pledge theory).
The Schultz defendants fail to articulate an argument supporting summary judgment for Count IV, breach of implied covenant of good faith and fair dealing. However, because as matter of law there is no contract, there can be no implied covenant arising therefrom. See Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. at 471. Accordingly, summary judgment is ALLOWED on this count.
ORDER
For the foregoing reasons, it is hereby ORDERED that Martin Schultz’s motion for summary judgment on the Adler’s claims of breach of contract and breach of implied covenant of good faith and fair dealing, Count I and IV, be ALLOWED and that Martin Schultz’s motion for summary judgment on the Adler’s claims of fraud/misrepresentation, intentional interference with contractual relations, negligent misrepresentation, and intentional infliction of emotional distress, Counts III, VII, XX and XXI, be DENIED. It is further ORDERED that Abraham Schultz’s motion for summary judgment on the Adler’s claim of breach of contract, breach of implied covenant of good faith and fair dealing and breach of a promise to make a gift, Counts I, IV and X, be ALLOWED.

Pertinent parts of Charles Adler’s testimony follow:
Q: What did you understand [Abraham Schultz] was saying he was going to do?
A: Exactly what he said he was going to do. He was going to put aside that money. That was earmarked for Marilyn, that when he died the money would be there waiting for her.
Q: So she would get it after his death?
A: Yeah, he put it aside for Marilyn that she would have it after his death, right.
Q: Once he was dead?
A: Right.
(Defendants’ Ex. F, p. 15.)
Pertinent parts of Robert Keefe, Jr.’s testimony follow:
Q: What did [Abraham Schultz] say exactly; do you remember?
A: . . . He’d say, When I die you’re going to be worth millions of dollars.
(Defendants’ Ex. G, p. 60.)
A: Right. He told me he set money aside for Martin and Marilyn.
Q: This was wealth that he had set aside that they would have after he died, is that right?
A: Yes.
(Defendants’ Ex. G, p. 61-62.)

Robert Keefe, Jr. states, in pertinent part:
7. During the period of time Mr. Schultz was thinking clearly, he often told me and often told Charles and Marilyn Adler in front of me that he had set aside great wealth for Marilyn. Mr. Schultz stated often in my and Marilyn's presence that he had life insurance policies, worth millions of dollars, in Marilyn’s name as a beneficiary.
8. Mr. Schultz further stated to me and to Marilyn in my presence that he had set aside millions of dollars for Marilyn’s benefit, with which she could do anything she wanted to.
(Plaintiffs’ Ex. 4.)
Charlotte Kirshner states, in pertinent part:
10. [Abraham Schultz] stressed constantly that he had set aside ample funds for [Charles] and Marilyn to always live the life-style that he had established for them.
11. [Abraham Schultz] repeatedly stated that he had already set aside millions of dollars in [Charles] and Marilyn Adler’s names.
12. [Abraham Schultz] stated that under no circumstances would he ever treat his two children other than equally, that his estate would be divided equally between them.
(Plaintiffs’ Ex. 6.)
Jeffrey Koster states, in pertinent part:
6. Abraham stated that he had already set aside millions of dollars for Charles and Marilyn . . .
(Plaintiffs’ Ex. 8.)
Hyman Rottenberg states, in pertinent part:
4. In essence, Abraham Schultz was stating that he had made certain improvements to the Property, but he was glad to do so because, even though his name was on the deed, in reality the condo was owned by Charles and Marilyn Adler and would soon be deeded to them.